VICKI E. CODY, SBN: 157842
CYNTHIA RICE, SBN: 87630
CALIFORNIA RURAL LEGAL ASSISTANCE, INC.
511 D Street
P.O. Box 2600
Marysville, CA 95901
Ph: (530) 742-5191
Fx: (530) 742-0421
vcody@crla.org

ILENE J. JACOBS, SBN: 126812
CALIFORNIA RURAL LEGAL ASSISTANCE, INC.
511 D Street
P.O. Box 2600
Marysville, CA 95901
Ph: (530) 742-7235
Fx: (530) 741-0841
ijacobs@crla.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRIL HEDRICK, DALE ROBINSON, KATHY LINDSEY, MARTIN C. CANADA, DARRY TYRONE PARKER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>JAMES GRANT, as Sheriff of Yuba County, Lieutenant FRED J. ASBY, as Yuba County Jailor, JAMES PHARRIS, ROY LANDERMAN, DOUG WALTZ, HAROLD J. "SAM" SPERBECK, JAMES MARTIN, as members of the Yuba COUNTY BOARD OF SUPERVISORS,<br><br>Defendants. | Case No.: 2:76-cv-00162-GEB-EFB<br><br>RESPONSE TO MOTION TO TERMINATE CONSENT DECREE and REQUEST FOR LEAVE TO WITHDRAW AS COUNSEL; DECLARATIONS OF VICKI E. CODY, ILENE J. JACOBS IN SUPPORT; ORDER [PROPOSED]<br><br>Date:     June 17, 2013<br>Time:    9:00 a.m.<br>Location: Courtroom 10, Sacramento<br>Judge: Honorable Garland E. Burrell |

Response to Motion to Terminate Consent Decree
and Request for Leave to Withdraw as Counsel; Declarations
of Vicki E. Cody, Ilene J. Jacobs in Support; Order [Proposed]
*Hedrick et al. v. Grant et al.*                                                                 Page 1

## INTRODUCTION and STATEMENT OF FACTS

California Rural Legal Assistance, Inc., (CRLA), files this Response to Motion to Terminate Consent Decree and seeks leave of this Court to withdraw as counsel for plaintiffs and the plaintiff class. CRLA is a non-profit California corporation which employs approximately fifty (50) attorneys located in twenty two (22) regional and satellite offices, and the San Francisco headquarters, to represent qualified clients based on eligibility criteria of contracting and/or granting entities that provide most of CRLA's funding. CRLA was incorporated in 1966, and serves primarily the rural poor, especially farmworkers.

CRLA is defined as a recipient that provides legal assistance, pursuant to the federal Legal Services Corporation Act of 1974 (Act), 42 U.S.C. Section 2996, *et seq.*, and receives grants or contracts under the Act to provide legal assistance to eligible clients subject to conditions imposed by the Act and its duly promulgated regulations.

Public Law 104-134, signed into law on April 26, 1996, provided payment to the Legal Services Corporation to carry out the Act and prohibited assistance to any person or entity that participates in a class action suit after July 31, 1996. The prohibition is against any recipient that participates in a class action regardless of the source of funds used to so do.

The class action prohibition was adopted in a regulation duly promulgated by LSC, 45 C.F.R. 1617.1 *et seq.* (61 FR 63754, 63755 Dec. 2, 1996), which states in pertinent part that the rule is intended to ensure that LSC recipients do not initiate or participate in class actions. A copy of the Code of Federal Regulation is attached for the Court's reference. It defines *class action* as a lawsuit filed as, or otherwise declared by the court having jurisdiction over the case to be, a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure or the comparable State statute or rule of civil procedure applicable in the court in which the action is filed, defines *initiating or participating in any class action* as any involvement at any stage of a class action

Response to Motion to Terminate Consent Decree
and Request for Leave to Withdraw as Counsel; Declarations
of Vicki E. Cody, Ilene J. Jacobs in Support; Order [Proposed]
Hedrick et al. v. Grant et al.                                                                                          Page 2

prior to or after an order granting relief, including acting as amicus curiae, co-counsel or otherwise providing representation relating to a class action, and states that *initiating or participating in any class action* does not include representation of an individual client seeking to withdraw from or opt out of a class or obtain the benefit of relief ordered by the court, or non-adversarial activities, including efforts to remain informed about, or to explain, clarify, educate or advise others about the terms of an order granting relief. It finally prohibits recipients of LSC funds from initiating or participating in any class action. *See,* 45 C.F.R. Sections 1617.1-1617.4.

CRLA similarly was prohibited, after April 26, 1996, from participating in any civil litigation on behalf of a person incarcerated in a federal, state or local prison and after August 29, 1996, from participating on behalf of such an incarcerated person in any administrative proceeding challenging the conditions of incarceration. See Pub. L. 104-134, 110 Stat. 1321. LSC incorporated this prohibition in a duly promulgated regulation, 45 C.F.R. Section 1637.1, *et seq.* (61 FR 45754, Aug. 29, 1996). Incarcerated is defined as the involuntary physical restraint of a person who has been arrested for or convicted of a crime and prison is any penal facility maintained under governmental authority. The prohibition extends to any civil litigation on behalf of a person who is incarcerated in a local prison, whether as a plaintiff or as a defendant, and to any administrative proceeding challenging the conditions of incarceration. It also requires the recipient to seek to withdraw from representation in any litigation of someone who becomes incarcerated while the litigation is pending. *See,* 45 C.F.R. Sections 1637.1 – 1637.4.

Loss of federal funding, the most significant percentage of CRLA funding, inevitably would result from violating these prohibitions and in the demise of the organization and its ability to provide legal services to thousands of clients throughout rural California. CRLA could not continue as class counsel in any litigation and continue to operate as an LSC funded legal services provider effective August 1, 1996. CRLA similarly could not participate in prison

Response to Motion to Terminate Consent Decree
and Request for Leave to Withdraw as Counsel; Declarations
of Vicki E. Cody, Ilene J. Jacobs in Support; Order [Proposed]
*Hedrick et al. v. Grant et al.*   Page 3

conditions litigation. The LSC funding restrictions of 1996, that caused CRLA to discontinue participation in class action and prison conditions lawsuits, remain in effect today. See Declaration of Ilene J. Jacobs, paragraphs 10-11, 14.

CRLA filed *Hedrick, et al.*, in 1976 in order to remedy unconstitutional conditions of confinement in the Yuba County jail. The case was certified as a class action in 1976, and the Court approved the Consent Decree in May 1979 following stipulation to a consent decree by the parties in November 1978. CRLA monitored compliance with the Consent Decree until 1996. See Declaration of Ilene J. Jacobs, paragraphs 15-16.

CRLA was informed that the Eastern District Court had administratively closed the file and CRLA notified the Yuba County Jail Commander, by letter dated August 1, 1996, that CRLA no longer would take jail complaints due to funding restraints and restrictions. A copy of the letter is attached to Yuba County's Motion to Terminate the Consent Decree. CRLA referred those complaints to other counsel as of August 1, 1996. See Letter from Ilene J. Jacobs to Captain Gerald Read of August 1, 1996, and Letter from Vicki Cody to John Vacek of May 3, 2013, attached to Motion to Terminate the Consent Decree. See also Declaration of Ilene J. Jacobs, paragraphs 2, 6-13, 15 and Declaration of Vicki E. Cody, paragraphs 9-15.

CRLA did not petition to withdraw as plaintiffs' and class counsel in *Hedrick et a.l.*, because the court file had been administratively closed and CRLA had ceased accepting any jail complaints and had ceased monitoring the Consent Decree, therefore CRLA had satisfied the LSC prohibitions. CRLA also had no communication with the named plaintiffs after 1979. See Declaration of Vicki E. Cody, paragraphs 4-5. CRLA responds to the Yuba County motion in the only manner open to it, by requesting leave of Court to withdraw as plaintiff and class counsel in view of Yuba County's pending motion to terminate the consent decree and the continuing effect of the applicable provisions of Public Law 104-134.

Response to Motion to Terminate Consent Decree
and Request for Leave to Withdraw as Counsel; Declarations
of Vicki E. Cody, Ilene J. Jacobs in Support; Order [Proposed]
*Hedrick et al. v. Grant et al.*                                                                 Page 4

## II. ARGUMENT

Eastern District of California Civ. R. 182 provides that leave to withdraw as counsel is governed by the California Rules of Professional Conduct. See California Rules of Professional Conduct Rule 3-700. The rule contains requirements for both mandatory and permissive withdrawal. The mandatory provisions (section B) are inapplicable in this matter. The general section and applicable section of the permissive rule are set forth below. A copy of the Rule is attached as an exhibit to this response for ease of the Court's reference.

Rule 3-700, provides:

(A)  In General.

(1) If permission for termination of employment is required by the rules of a tribunal, a member shall not withdraw from employment in a proceeding before that tribunal without its permission.

(2) A member shall not withdraw from employment until the member has taken reasonable steps to avoid reasonably foreseeable prejudice to the rights of the client, including giving due notice to the client, allowing time for employment of other counsel, complying with rule 3-700 (D), and complying with applicable laws and rules...

(C)  Permissive Withdrawal. If rule 3-700(B) is not applicable, a member may not request permission to withdraw in matters pending before a tribunal, and may not withdraw in other matters, unless such request or such withdrawal is because:

(1) The client

(a) insists upon presenting a claim or defense that is not warranted under existing law and cannot be supported by good faith argument for an extension, modification, or reversal of existing law, or

(b) seeks to pursue an illegal course of conduct, or

(c) insists that the member pursue a course of conduct that is illegal or that is prohibited under these rules or the State Bar Act, or

(d) by other conduct renders it unreasonably difficult for the member to carry out the employment effectively, or

Response to Motion to Terminate Consent Decree
and Request for Leave to Withdraw as Counsel; Declarations
of Vicki E. Cody, Ilene J. Jacobs in Support; Order [Proposed]
Hedrick et al. v. Grant et al.                                                          Page 5

(e) insists, in a matter not pending before a tribunal, that the member engage in conduct that is contrary to the judgment and advice of the member but not prohibited under these rules or the State Bar Act, or

(f) breaches an agreement or obligation to the member as to expenses or fees.

(2) The continued employment is likely to result in a violation of these rules or of the State Bar Act; or

(3) The inability to work with co-counsel indicates that the best interests of the client likely will be served by withdrawal; or

(4) The member's mental or physical condition renders it difficult for the member to carry out the employment effectively; or

(5) The client knowingly and freely assents to termination of the employment; or

(6) The member believes in good faith, in a proceeding pending before a tribunal, that the tribunal will find the existence of other good cause for withdrawal....

CRLA seeks permission of this Court to withdraw as plaintiffs' and class counsel and believes in good faith that the Court will find the existence of good cause for the withdrawal. The consent decree had been in effect for approximately seventeen (17) years at the time Public Law 104-134, was signed into law. CRLA had taken complaints from the jail from putative class members until that time and had monitored the implementation of the Consent Decree until August 1, 1996, including inspecting the remodel of the jail, then referred jail complaints to other resources and ceased monitoring. CRLA had no contact with the original plaintiffs in the case for more than seventeen (17) years and CRLA then was prohibited from undertaking any participation in the suit and ceased. See Declaration of Ilene J. Jacobs, paragraphs 2-15, Declaration of Vicki E. Cody paragraphs 4-5, 12-14.

The Court should permit CRLA to withdraw as plaintiffs' and class counsel under both the general and specific requirements of Rule 3-700. The proposed withdrawal of CRLA at this juncture will not prejudice class interests in view of the fact that CRLA has not taken any jail

Response to Motion to Terminate Consent Decree
and Request for Leave to Withdraw as Counsel; Declarations
of Vicki E. Cody, Ilene J. Jacobs in Support; Order [Proposed]
Hedrick et al. v. Grant et al.                                              Page 6

complaints nor monitored the terms since August 1, 1996, without apparent prejudice to the class. Should the Court find that class interests must be represented, CRLA respectfully requests that the Court seek to appoint other legal counsel to represent the class in view of the prohibition and potential consequences to CRLA, and the vulnerable population who rely on CRLA's legal services who will be unrepresented should LSC terminate funding to CRLA as a consequence of violating the prohibitions on class action and prison litigation representation.

### III. CONCLUSION

California Rural Legal Assistance, Inc., and its attorneys, respectfully request leave to withdraw as class counsel.

Dated: June 3, 2013

CALIFORNIA RURAL LEGAL ASSISTANCE, INC.

By: _____
Ilene J. Jacobs
Vicki E. Cody
Attorneys for Plaintiffs

Response to Motion to Terminate Consent Decree
and Request for Leave to Withdraw as Counsel; Declarations
of Vicki E. Cody, Ilene J. Jacobs in Support; Order [Proposed]
Hedrick et al. v. Grant et al.                                        Page 7

Cal. Rules of Prof'l Conduct, Rule 3-700



Deering's California Codes Annotated
Cal. State Bar Rules Copyright (c) 1937 - 2013, The State Bar of California
Annotated by Deering's
Copyright (c) 2013
The State Bar of California.
All rights reserved. Reprinted with permission.

*** This document is current with amendments effective May 7, 2013 ***

RULES OF THE STATE BAR OF CALIFORNIA
Rules of Professional Conduct
Chapter 3.  Professional Relationship With Clients

*Cal. Rules of Prof'l Conduct, Rule 3-700* (2013)

Rule 3-700   Termination of Employment

(A) In General.

(1) If permission for termination of employment is required by the rules of a tribunal, a member shall not withdraw from employment in a proceeding before that tribunal without its permission.

(2) A member shall not withdraw from employment until the member has taken reasonable steps to avoid reasonably foreseeable prejudice to the rights of the client, including giving due notice to the client, allowing time for employment of other counsel, complying with rule 3-700(D), and complying with applicable laws and rules.

(B) Mandatory Withdrawal. A member representing a client before a tribunal shall withdraw from employment with the permission of the tribunal, if required by its rules, and a member representing a client in other matters shall withdraw from employment, if:

(1) The member knows or should know that the client is bringing an action, conducting a defense, asserting a position in litigation, or taking an appeal, without probable cause and for the purpose of harassing or maliciously injuring any person; or

(2) The member knows or should know that continued employment will result in violation of these rules or of the State Bar Act; or

(3) The member's mental or physical condition renders it unreasonably difficult to carry out the employment effectively.

(C) Permissive Withdrawal. If rule 3-700(B) is not applicable, a member may not request permission to withdraw in matters pending before a tribunal, and may not withdraw in other matters, unless such request or such withdrawal is because:

(1) The client

(a) insists upon presenting a claim or defense that is not warranted under existing law and cannot be supported by good faith argument for an extension, modification, or reversal of existing law, or

(b) seeks to pursue an illegal course of conduct, or

(c) insists that the member pursue a course of conduct that is illegal or that is prohibited under these rules or the State Bar Act, or

      (d) by other conduct renders it unreasonably difficult for the member to carry out the employment effectively, or

      (e) insists, in a matter not pending before a tribunal, that the member engage in conduct that is contrary to the judgment and advice of the member but not prohibited under these rules or the State Bar Act, or

      (f) breaches an agreement or obligation to the member as to expenses or fees.

    (2) The continued employment is likely to result in a violation of these rules or of the State Bar Act; or

    (3) The inability to work with co-counsel indicates that the best interests of the client likely will be served by withdrawal; or

    (4) The member's mental or physical condition renders it difficult for the member to carry out the employment effectively; or

    (5) The client knowingly and freely assents to termination of the employment; or

    (6) The member believes in good faith, in a proceeding pending before a tribunal, that the tribunal will find the existence of other good cause for withdrawal.

  **(D) Papers, Property, and Fees.** A member whose employment has terminated shall:

    (1) Subject to any protective order or non-disclosure agreement, promptly release to the client, at the request of the client, all the client papers and property. "Client papers and property" includes correspondence, pleadings, deposition transcripts, exhibits, physical evidence, expert's reports, and other items reasonably necessary to the client's representation, whether the client has paid for them or not; and

    (2) Promptly refund any part of a fee paid in advance that has not been earned. This provision is not applicable to a true retainer fee which is paid solely for the purpose of ensuring the availability of the member for the matter.

**HISTORY:**

Rule 3-700 approved by Supreme Court November 28, 1988, operative May 27, 1989.

**NOTES:**

**Historical Derivation:**

Former Prof Cond rule 2-111.


**Discussion:**


**1988**

  Subparagraph (A)(2) provides that "a member shall not withdraw from employment until the member has taken reasonable steps to avoid reasonably foreseeable prejudice to the rights of the clients." What such steps would include, of course, will vary according to the circumstances. Absent special circumstances, "reasonable steps" do not include providing additional services to the client once the successor counsel has been employed and rule 3-700(D) has been satisfied.

  Paragraph (D) makes clear the member's duties in the recurring situation in which new counsel seeks to obtain client files from a member discharged by the client. It codifies existing case law. (See *Academy of California Optometrists v. Superior Court (1975) 51 Cal.App.3d 999 [124 Cal.Rptr. 668]; Weiss v. Marcus (1975) 51 Cal.App.3d 590 [124 Cal.Rptr. 297].*) Paragraph (D) also requires that the member "promptly" return unearned fees paid in advance. If a client disputes the amount to be returned, the member shall comply with rule 4-100(A)(2).

61 FR 63754 & 63755

45 CFR 1617 et seq.



FEDERAL REGISTER

Vol. 61, No. 232

Rules and Regulations

LEGAL SERVICES CORPORATION

45 CFR Part 1617

Class Actions

*61 FR 63754*

DATE: Monday, December 2, 1996

ACTION: Final rule.

---

To view the next page, type .np* TRANSMIT.
To view a specific page, transmit p* and the page number, e.g. p*1

---

[*63754]

SUMMARY: This final rule revises the Legal Services Corporation's ("Corporation" or "LSC") interim regulation concerning class actions. The revisions are intended to implement a restriction contained in the Corporation's Fiscal Year ("FY") 1996 appropriations act which is currently incorporated by reference in the Corporation's FY 1997 appropriations act. The restriction prohibits the involvement of LSC recipients in class actions.

DATES: This final rule is effective on January 1, 1997.

FOR FURTHER INFORMATION CONTACT: Victor M. Fortuno, General Counsel, (202) 336-8910.

SUPPLEMENTARY INFORMATION: On May 19, 1996, the Operations and Regulations Committee ("Committee") of the LSC Board of Directors' ("Board") requested LSC staff to prepare an interim rule to implement § 504(a)(7), a restriction in the Corporation's FY 1996 appropriations act, Pub. L. 104-134, 110 Stat. 1321 (1996), which prohibited involvement of LSC recipients in class actions. The Committee held public hearings on staff proposals on July 8 and 19, and the Board adopted an interim rule on July 20 for publication in the Federal Register. Although the interim rule was effective upon publication, see *61 FR 41963* (Aug. 13, 1996), the Corporation also solicited comments on the rule for review and consideration by the Committee and Board.

The Corporation received 7 comments on the interim rule. The Committee held public hearings on the rule on September 29, 1996, and made several recommendations for revisions to the Board. The Board adopted this final rule on September 30, 1996.

The Corporation's FY 1997 appropriations act became effective on October 1, 1996, see Pub. L. 104-208, 110 Stat. 3009. It incorporated by reference the § 504 condition on LSC grants included in the FY 1996 appropriations act im-

plemented by this rule. Accordingly, the preamble and text of this rule continue to refer to the appropriate section number of the FY 1996 appropriations act.

The interim rule was intended to implement a clear prohibition in the Corporation's FY 1996 appropriations act on any participation in class actions by LSC recipients. Other than providing a transition period for programs to withdraw from pending cases, the appropriations act provided no exceptions and allowed for no Corporation waivers to the prohibition. The legislative history of this provision indicates an intent that legal services programs should focus their resources on representation of individual poor clients and not be involved in any class actions. Accordingly, the interim rule contained a strict prohibition on participation in class actions with no exceptions or waivers. This final rule continues the interim rule's strict prohibition but better clarifies those activities that constitute participation in class actions.

A section-by-section discussion of this final rule is provided below.

*Section 1617.1 Purpose*

The purpose of this rule is to prohibit involvement by LSC recipients in class actions.

*Section 1617.2 Definitions*

The definition of "class action" in the interim rule deferred to widely accepted Federal and local court rules and statutory definitions. Thus, a class action for the purposes of this part was defined as a class action pursuant to *Rule 23 of the Federal Rules of Civil Procedure* or the comparable State statute or rule of civil procedure governing the action in the court where it is filed. No comments challenged the definition, and no changes have been made to the definition in this final rule.

The definition of "initiating or participating in any class action" in the interim rule was intended to clarify that any involvement in a class action is prohibited prior to an order granting relief. Public comments on part 1617 generally asked for more clarity as to the scope of the definition. In general, the Board decided that it should state in the rule that all participation, whether before or after entry of an order, is prohibited; and the final rule reflects that change. In addition, the Board decided to address some of the specific issues addressed by the comments.

One comment urged the deletion of "non-adversarial" before "monitoring," stating that any action, even an adversarial action, should be allowed once an order granting relief has been issued. The Board did not take this approach. Participation in adversarial actions, even after entry of an order, constitutes active participation in a class action, and such involvement is not permitted under the law. The use of the term "non-adversarial" was intentional. The Corporation meant to prohibit any adversarial action after relief is granted, and the term is retained in this final rule. Furthermore, the term "monitoring" is replaced with "activities" because its use seemed to imply a more active role for recipients than was intended.

Comments further indicated that the rule should be more explicit about the types of activities the Corporation considers to be adversarial and non-adversarial. Accordingly, this final rule adds language to clarify what would be considered to be non-adversarial. Non-adversarial activities would include efforts to remain informed about the terms of an order granting relief as well as efforts to explain, clarify, educate or give advice about an order granting relief.

One comment questioned the use of the term "legal assistance" in the definition of "initiating or participating in any class action." Because the term as defined in 45 CFR part 1600 has a different focus than is intended in this definition, the Board changed "legal assistance" to "representation."

Other comments suggested deleting the language in the definition that prohibits program attorneys from assisting their clients to "withdraw from" or "opt out of" a class action. The comments stated that the inclusion of the language in the definition goes beyond the intent of the statutory restriction and has the opposite effect of "participating" in a class action. Arguing that representation to withdraw from or opt out of a class action may be essential to allow individual representation, the comments urged the Corporation to change the rule to allow such representation.

The Board agreed that efforts to withdraw from a class action are consistent with the Congressional intent that LSC recipients provide representation to individual clients and should not be viewed as efforts to participate or to be included in a class action. The Board revised paragraph (b) of the definition of "initiating or participating in any class action" to clarify that the definition does not include the representation of an individual client seeking to withdraw from or opt out of a class by deleting reference to withdrawing or opting out from the definition. This change only authorizes actions by

a recipient [*63755] necessary to ensure that its client is not included in the class or that any class order would not apply to the recipient's client. Any other activity in the case, however, is not permitted.

In summary, the final rule clarifies the definition of "initiating or participating in any class action" as extending to all types of involvement at all stages of a class action. Recipients may not initiate a class action or participate in one initiated by others, either at the trial or appellate level, nor may they continue involvement in a case that is later certified or otherwise determined by the court to be a class action. However, in response to comments on a situation where the recipient's client does not file for or move for certification of a class action, the Board requested that the following example be included in this commentary regarding the definition of "initiating or participating in a class action": In a case where the recipient files or otherwise initiates action to have the case certified as a class action, participation in the case is prohibited from the point that the recipient takes such actions. On the other hand, if the recipient is representing a client in a pending action that was not filed as a class action, and another party moves to have the case certified as a class action, the recipient will not be deemed to be participating in a class action until the court certifies it as such. Finally, recipients may not act as amicus curiae or co-counsel in a class action or intervene in a class action on behalf of individual clients who seek to intervene in, modify, or challenge the adequacy of the representation of a class. Finally, recipients may not represent defendants in a class action.

Certain situations are not within the definition and are thus not prohibited by this rule. For example, recipients may advise clients about the pendency of a class action or its effect on the client and what the client would need to do to benefit from the case. Recipients may represent an eligible client in withdrawing from or opting out of a class action. Furthermore, the definition of a class action would not include a mandamus action or injunctive or declaratory relief actions, unless such actions are filed or certified as class actions.

Recipients may also represent an individual client seeking the benefit of the order, provided that any such involvement is only on behalf of an individual client and does not involve representation of an entire class and may represent an individual client seeking to withdraw from or opt out of a class.

*Section 1617.3 Prohibition*

This section prohibits LSC recipients from initiating or participating in any class action.

*Section 1617.4 Recipient Policies and Procedures*

This section requires recipients to adopt written policies and procedures to guide the recipient's staff in ensuring compliance with this rule.

**List of Subjects in 45 CFR Part 1617**

Grant programs-law, Legal services.

For reasons set out in the preamble, LSC revises 45 CFR part 1617 to read as follows:

**PART 1617--CLASS ACTIONS**

Sec.

1617.1 Purpose.

1617.2 Definitions.

1617.3 Prohibition.

1617.4 Recipient policies and procedures.

Authority: *29 U.S.C. 2996e*(d)(5); 110 Stat. 3009 (1996); 110 Stat. 1321 (1996).

**§ 1617.1 -- Purpose.**

This rule is intended to ensure that LSC recipients do not initiate or participate in class actions.

§ 1617.2 -- Definitions.

(a) *Class action* means a lawsuit filed as, or otherwise declared by the court having jurisdiction over the case to be, a class action pursuant to *Rule 23 of the Federal Rules of Civil Procedure* or the comparable State statute or rule of civil procedure applicable in the court in which the action is filed.

(b)(1) *Initiating or participating in any class action* means any involvement at any stage of a class action prior to or after an order granting relief. "Involvement" includes acting as amicus curiae, co-counsel or otherwise providing representation relating to a class action.

(2) *Initiating or participating in any class action* does not include representation of an individual client seeking to withdraw from or opt out of a class or obtain the benefit of relief ordered by the court, or non-adversarial activities, including efforts to remain informed about, or to explain, clarify, educate or advise others about the terms of an order granting relief.

§ 1617.3 -- Prohibition.

Recipients are prohibited from initiating or participating in any class action.

§ 1617.4 -- Recipient policies and procedures.

Each recipient shall adopt written policies and procedures to guide its staff in complying with this part.

Dated: November 26, 1996.

**Victor M. Fortuno,**

*General Counsel.*

[FR Doc. 96-30620 Filed 11-29-96; 8:45 am]

BILLING CODE 7050-01-P

61 FR 45754

45 CFR 1637 et seq.



FEDERAL REGISTER

Vol. 61, No. 169

Rules and Regulations

LEGAL SERVICES CORPORATION

45 CFR Part 1637

Representation of Prisoners

Part IX

*61 FR 45754*

DATE: Thursday, August 29, 1996

ACTION: Interim rule with request for comments.

---

To view the next page, type .np* TRANSMIT.
To view a specific page, transmit p* and the page number, e.g. p*1

---

[*45754]

SUMMARY: This interim rule implements a restriction in the Legal Services Corporation's ("LSC" or "Corporation") FY 1996 appropriations act which prohibits recipients from participating in any litigation on behalf of prisoners. Although this interim rule is effective upon publication, the Corporation also solicits public comment on the interim rule in anticipation of adoption of a final rule at a later time.

DATES: This interim rule is effective on August 29, 1996. Comments must be submitted on or before October 28, 1996.

ADDRESSES: Comments should be submitted to the Office of the General Counsel, Legal Services Corporation, 750 First St, NE., 11th Floor, Washington, DC 20002-4250.

FOR FURTHER INFORMATION CONTACT: Victor M. Fortuno, General Counsel, (202) 336-8910.

SUPPLEMENTARY INFORMATION: On May 19, 1996, the Operations and Regulations Committee ("Committee") of the LSC Board of Directors ("Board") requested the LSC staff to prepare an interim rule to implement § 504(a)(15), a restriction in the Corporation's FY 1996 appropriations act, Public Law 104-134, 110 Stat. 1321 (1996), which prohibits participation of LSC recipients in any litigation on behalf of a person incarcerated in a Federal, State or local prison. The Committee held hearings on staff proposals on July 9 and 19 and the Board adopted this interim rule on July 20 for publication in the Federal Register. The Committee recommended and the Board agreed to publish this rule as an interim rule. An interim rule is necessary in order to provide prompt and critically necessary guidance to LSC

recipients on legislation which is already effective and which carries strong penalties for noncompliance. Because of the great need for guidance on how to comply with substantially revised legislative requirements, prior notice and public comment are impracticable, unnecessary, and contrary to the public interest. *See 5 U.S.C. 553(b)(3)(B) and 553(d)(3).* Accordingly, this rule is effective upon publication.

However, the Corporation also solicits public comment on the interim rule for review and consideration by the Committee. After receipt of public comment, the Committee intends to hold public hearings to discuss the written comments and to hear oral comments. It is anticipated that a final rule will be issued which will supersede this interim rule.

Generally, this rule prohibits any recipient involvement in litigation on behalf of persons who are incarcerated in a Federal, State or local prison.

A section-by-section discussion of this interim rule is provided below.

*Section 1637.1 Purpose*

This rule is intended to ensure that LSC recipients do not litigate on behalf of any person who is incarcerated in a Federal, State or local prison.

*Section 1637.2 Definitions*

The statutory restriction prohibits LSC recipients from participating in any litigation on behalf of a person who is incarcerated in a Federal, State or local prison. To provide guidance regarding the reach of this restriction, the definition section defines the terms "incarcerated" and "Federal, State or local prison."

"Incarcerated" is defined as the involuntary physical restraint in a facility dedicated to such restraint of a person who has been arrested for or convicted of a crime. The term "Federal, State or local prison" refers to any facility maintained by a governmental authority for purposes of housing persons who are incarcerated.

The definition includes pre-trial detainees even though they are persons who have not been convicted of a crime. [*45755] Conversely, it does not apply to parolees and probationers, even though they are persons who have been convicted of a crime and who are still under the jurisdiction of the corrections department, because they are no longer physically held in custody in a prison. The definitions would include persons who are held involuntarily in a mental health facility if they were committed as a result of their arrest for a crime. On the other hand, a person held in a mental health facility because of a civil commitment would not be incarcerated and could be represented. The term would also not include juvenile offenders who have not been charged as adults because charges against juveniles are generally considered to be civil in nature.

Intermittent imprisonment poses close questions, which would be resolved on a case-by-case basis, determined by whether the person is predominantly incarcerated or free. For example, persons on furlough or on daytime work release should be considered to be incarcerated; however, persons serving a term of successive weekends in prison would be considered not to be incarcerated.

"Federal, State or local prison" is defined as a facility that is maintained under governmental authority for purposes of housing persons who are incarcerated. It includes private facilities under contract with State corrections departments to house convicted criminals. It also includes local jails.

*Section 1637.3 Prohibition*

This section states the prohibition on participation in litigation or administrative proceedings challenging the conditions of incarceration on behalf of a person who is incarcerated in a Federal, State or local prison.

*Section 1637.4 Change in Circumstances*

This section addresses the situation where there is a change of circumstances after litigation is undertaken on behalf of an eligible client and the individual becomes incarcerated. Such a change poses a practical problem on which the regulation seeks to provide guidance. When a program learns that its client has become incarcerated in a prison, it must use its best efforts to discontinue representation of the individual. Incarceration, however, may be of short duration and, in some circumstances, by the time the recipient has succeeded in withdrawing from the matter consistent with its ethi-

cal duty to the client, the incarceration may have ended and with it the basis for the prohibition. To address such a situation, the rule provides an exception to the general prohibition. The exception would allow the recipient's attorney to continue representation when the anticipated duration of the incarceration is likely to be brief and the litigation will outlast the period of the incarceration. As a guideline, the recipient should consider incarceration which is expected to last less than 3 months to be brief.

When incarceration has occurred after litigation has begun and its duration is uncertain, there may be circumstances where a court will not permit withdrawal in spite of the recipient's best efforts to do so, generally because withdrawal would prejudice the client and is found to be inconsistent with the recipient's professional responsibilities. Whether continued representation in such circumstances would be deemed to violate the regulation will be determined on a case-by-case basis. Recipients should, however, document their efforts to withdraw and renew the effort if it appears that the incarceration will be of longer duration than originally anticipated.

During the period in which the recipient is seeking alternate counsel or other proper ways to conclude its involvement in such litigation, it may file such motions as are necessary to preserve its client's rights in the matter under litigation. The recipient may not file any additional, related claims on behalf of that client, however, unless failure to do so would jeopardize an existing claim or right of the client.

*Section 1637.5 Recipient Policies, Procedures and Recordkeeping*

This section requires recipients to establish written policies and procedures to ensure compliance with this part. Recipients are also required to maintain documentation adequate to demonstrate compliance with this part.

**List of Subjects in 45 CFR Part 1637**

Grant programs-law; Legal Services; Prisoner litigation.

For reasons set forth in the preamble, 45 CFR Chapter XVI is amended by adding part 1637 as follows:

PART 1637--RESTRICTION ON LITIGATION ON BEHALF OF PRISONERS

Sec.

1637.1 Purpose.

1637.2 Definitions.

1637.3 Prohibition.

1637.4 Change in circumstances.

1637.5 Recipient policies, procedures and recordkeeping.

**Authority:** Pub. L. 104-134, 110 Stat. 1321, *42 U.S.C. 2996g(e)*.

**§ 1637.1 -- Purpose.**

This part is intended to ensure that recipients do not participate in any litigation on behalf of persons incarcerated in Federal, State or local prisons.

**§ 1637.2 -- Definitions.**

(a) *Incarcerated* means the involuntary physical restraint, in a facility dedicated to such restraint, of a person who has been arrested for or convicted of a crime.

(b) *Federal, State or local prison* means any facility maintained under governmental authority for purposes of housing persons who are incarcerated.

**§ 1637.3 -- Prohibition.**

A recipient may not participate in any civil litigation on behalf of a person who is incarcerated in a Federal, State or local prison, whether as a plaintiff or as a defendant, nor may a recipient participate on behalf of such an incarcerated person in any administrative proceeding challenging the conditions of incarceration.

### § 1637.4 -- Change in circumstances.

If, to the knowledge of the recipient, a client becomes incarcerated after litigation has commenced, the recipient must use its best efforts to withdraw promptly from the litigation, unless the period of incarceration is anticipated to be brief and the litigation is likely to continue beyond the period of incarceration.

### § 1637.5 -- Recipient policies, procedures and recordkeeping.

Each recipient shall adopt written policies and procedures to guide its staff in complying with this part and shall maintain records sufficient to document the recipient's compliance with this part.

Dated: August 20, 1996.

**Suzanne B. Glasow,**

*Senior Counsel for Operations & Regulations.*

[FR Doc. 96-21663 Filed 8-28-96; 8:45 am]

BILLING CODE 7050-01-P