UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DERRIL HEDRICK, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES GRANT, et al.,<br><br>Defendants. | No. 2:76-cv-00162-JAM-EFB<br><br><br><br>ORDER |

Currently pending before the court is the joint motion by the parties for approval of the Second Amended Consent Decree ("SACD"). ECF No. 285. The parties have consented to proceed before a magistrate judge. ECF No. 242; 28 U.S.C. § 636(a)(5) & (c). For the reasons that follow, the court will grant the motion.

**I.      Background**

This case was originally filed by a group of prisoners at the Yuba County Jail against various county officials in 1976. ECF No. 94 (copy of original docket). Plaintiffs alleged that conditions at the Jail violated the U.S. Constitution, the California Constitution, and California state law. ECF No. 163-1 at 24-55 (original complaint). The court certified the plaintiff class on July 23, 1976, which consisted of "all prisoners of the Yuba County Jail on March 24, 1976, or at any time during the pendency of this lawsuit." ECF No. 163-1 at 57-58 (Order of July 23, 1976).

////

1

Several months later, the court concluded that county officials were violating prisoners' constitutional rights with regard to inmate opportunities for exercise and recreation, the adequacy of the law library, and the lack of a trusty program for female inmates. ECF No. 163-2 at 403-12 (Order of Nov. 12, 1976). The court granted preliminary injunctive relief to plaintiffs on the exercise and library claims and summarily adjudicated the female trusty program claim in plaintiffs' favors. *Id*.

In 1979, the court entered a comprehensive Consent Decree binding on the county officials and their successors. ECF No. 163-1 at 60-109 (Nov. 2, 1979 Consent Decree). In 1987, the court ordered the clerk to administratively terminate this case "without prejudice to the right of the parties to reopen the proceedings for the entry of any stip[ulation], mot[ion], ord[er] or any other purpose required to obtain a final or interim determination of the litigation." ECF No. 94 at 5 (docket entry No. 93).

Defendants later moved to terminate the decree; the motion was denied, and the Decree remains in force. ECF No. 135 (Order of April 2, 2013 denying defendants' motion to terminate the Decree), aff'd by *Hedrick v. Grant*, 648 Fed. App'x. 715 (9th Cir. 2016).

In October 2016, plaintiffs filed a motion to enforce the Decree, alleging that defendants (successors-in-office to the original defendants) were violating various provisions of that agreement. Plaintiffs further alleged that these violations of the Decree also violated inmates' constitutional rights. Lastly, plaintiffs alleged additional constitutional violations (denial of necessary outside medical and mental health care, unduly risky medication practices, denial of necessary psychosocial treatment, denial of confidentiality and language interpretation for medical and mental health services, denial of out-of-cell time to segregated prisoners). ECF No. 163. In addition to seeking enforcement of the Decree, plaintiffs asked the court to issue further remedial orders in the form of six "plans" to remedy these alleged constitutional violations: an Intake Screening Plan, a Health Care Implementation Plan, a Suicide Prevention Plan, a Staffing Plan, an Inpatient Care Plan, and an Exercise and Recreation Plan. Id. at 60.

At the hearing on the motion to enforce, the court directed the parties to settlement conference. ECF No. 201. Thereafter, the parties engaged in many settlement conferences with

Magistrate Judge Kendall Newman from May 5, 2017 through May 18, 2018.  Judge Newman also toured the Jail with counsel for the parties.  ECF No. 206.  Through these negotiations, the parties agreed on an Amended Consent Decree (ACD).  The court granted final approval of the ACD on January 30, 2019.  ECF No. 258.

Class counsel represents that, since that time, they have monitored conditions at the Jail and defendants' compliance with the ACD.  That monitoring has consisted of (1) reviewing defendants' quarterly document productions, (2) conducting seven monitoring tours of the Jail, (3) corresponding with and interviewing hundreds of class members, (4) reviewing the medical and mental health records of dozens of class members, and (5) retaining an expert mental health consultant to assess the Jail's mental health and suicide prevention systems.  ECF No. 269-1, Grunfeld Dec., ¶ 10.  Counsel documented their findings from the monitoring in seven reports and additional letters to defendants.  *Id*.  In these communications, class counsel asserted that defendants were not complying with the ACD's staffing requirements, especially with regard to mental health positions.  Counsel reported that defendants had a practice of cycling certain severely mentally ill class members in and out of the Jail's safety and step-down cells for weeks or months at a time.  Counsel also asserted that class members who needed more intensive mental health treatment than the Jail could provide were being placed in restrictive housing instead of being transferred to a facility capable of treating them.  The County contests that the Jail was or is not in substantial compliance with the ACD.

According to class counsel, they began to focus their efforts on the Jail's mental health and suicide prevention systems after two inmates died from suicide and one from a fentanyl overdose during one year.

With the ACD set to terminate on January 30, 2023 (unless counsel successfully moved for its extension), class counsel approached defendants in July 2022 to discuss a negotiated extension.  In a letter to defendants, class counsel wrote that, while defendants had made significant progress toward compliance with many provisions of the ACD, the Jail's mental health program remained out of compliance.  ECF No. 269-2, Freedman Dec., Ex. B.

////

The court entered a stipulated order on September 26, 2022, extending the ACD's duration until May 31, 2023 in order to allow the parties time to negotiate. ECF No. 267. After five months of discussions, the parties have agreed on the proposed SACD. ECF No. 269-2, ¶¶ 4-5. In ordering preliminary approval of the SACD on March 9, 2023, the court directed defendants to publish notice of the SACD to class members on the county's website, placing it in all Jail facilities (including particular locations), making copies of the SACD available in the Jail law library, and making it available to class members upon request. ECF No. 274. The notice informed class members of their right to file objections to the SACD by April 14, 2023. Defendants submitted an affidavit attesting to their compliance with the court's order regarding the notice. ECF No. 276.

However, that compliance came into question when class member Mary Abbott filed objections to the SACD. ECF No. 278 at 8-9. In her objections, she represented that: (1) the Jail did not make the SACD available in the law library for inmate review, (2) some of the notices that were posted in the Jail pertained to the ACD, not the SACD, and noted a comment due date of December 30, 2018, and (3) the notice is misleading because it gives short shrift to the changes from the ACD to the SACD, notably the omission of many of the ACD's provisions, including requirements that the Jail take steps to enhance inmate recreation opportunities, increase medical staff, and accommodate disabled inmates.

Based on Ms. Abbot's submission, the court ordered defendants to re-do the notice and extended the comment period through June 31, 2023. ECF No. 281. On May 23, 2023, defendants submitted an affidavit confirming the posting of notice of the SACD in compliance with the court's order. ECF No. 283. Two class members submitted objections to the SACD: Mary Abbot and Brittany Keeton. ECF No. 285-1 at 9-22 (Abbot materials) & 24-35 (Keeton materials). Ms. Abbot objects on the following grounds:

1. The SACD is difficult to read, repetitive, long, and confusing; and
2. The SACD drops nearly all of the ACD's provisions regarding physical healthcare, women's health, exercise and recreation, ADA facility access, and education.

////

*Id.* at 9-10. Ms. Keeton argues that she was denied necessary psychiatric medication in the Jail for 8 days, was denied accommodation for breastfeeding, faced rudeness from staff after she cut her own hair, and was denied treatment for post-partum depression. *Id.* at 26-30. She would like the SACD revised to include provisions requiring mandatory round-the-clock medical staffing. *Id.* at 26.

The Jail's Captain, Allan Garza, has submitted a declaration contradicting some of the claims made by Ms. Keeton. ECF No. 286. According to Captain Garza, his investigation of her claims showed that, rather than being denied her medication, Ms. Keeton refused it. *Id.* Nor was she lactating at the time of her incarceration. *Id.*

**II.     Analysis**

In the Ninth Circuit, there is a "strong judicial policy" favoring settlement of complex class action litigation. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Such settlements should be approved if "fundamentally fair, adequate and reasonable." *Id.*; *see also* Fed. R. Civ. P. 23(e)(2) (providing that the court may approve a settlement binding on class members if, after hearing, it determines that the settlement is fair, reasonable, and adequate). The decision to approve or reject a settlement proposal is committed to the trial judge's discretion and will only be reversed if discretion was clearly abused. *Id.*

Review of a proposed class settlement proceeds in two phases. *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1062 (C.D. Cal. 2010). At the preliminary stage, the court determines whether the proposed agreement is within the range of possible approval and whether notice should be sent to class members. *Id.* at 1063. The court has issued preliminary approval of the SACD and now is presented with the second and final stage of approval.

At this stage, the Ninth Circuit has directed courts to consider various factors:

> [T]he strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Class Plaintiffs v. Seattle*, 955 F.2d at 1291. These factors are not exclusive. *Torrisi v. Tucson*

*Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993).  Rule 23(e)(2) provides a list of similar factors the court should consider in making the ultimate determination of whether a settlement is "fair, adequate, and reasonable":

> (A) whether the class representatives and class counsel have adequately represented the class;
> (B) whether the proposal was negotiated at arm's length;
> (C) whether the relief provided for the class is adequate, taking into account:
>   (i) the costs, risks, and delay of trial and appeal;
>   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>   (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) whether the proposal treats class members equitably relative to each other.

The court finds that, considering all of these factors, the SACD is fundamentally adequate, reasonable, and fair.

The SACD represents a compromise to stave off further litigation.  With the ACD set to expire, the parties disagreed as to whether defendants were in substantial compliance with it.  To extend it would have required further litigation, which plaintiffs could have lost.  Instead, plaintiffs' counsel reached agreement with defendants to reduce the scope of the consent decree and focus it on mental health issues for a period of two additional years past the ACD's expiration (the new expiration date is January 31, 2025).  According to class counsel, the SACD "addresses the most significant areas of non-compliance" that class counsel had found in the course of its monitoring efforts, providing for "two additional years of Defendants being bound by substantial obligations relating to mental health and suicide prevention."  ECF No. 285 at 11.

The SACD includes all of the critical mental health provisions that were already in the ACD.  Additionally, the SACD provides for the appointment of a third-party monitor and provides enhanced protections to some aspects of mental health care in the Jail.  ECF No. 285-2 at 3-5, 7-8, 19-20, 22-23, 29-34.  The parties have selected Jackie Clark to act as monitor and have submitted Ms. Clark's CV; she has significant experience in correctional healthcare.  *Id.* at 11-12.  Under the SACD, defendants will provide Ms. Clark with access to all documents relating to their compliance with the SACD and allow her periodic Jail tours.  Ms. Clark will also investigate inmate complaints about defendants' compliance and provide periodic reports on

compliance.

The parties have agreed to cap fees for class counsel at $75,000/year, which is $40,000 less than the cap provided for in the ACD. This reduction reflects class counsel's decreased duties from the smaller scope of the SACD and the delegation of some duties to Ms. Clark, who is also entitled to payment under the SACD. The parties did not discuss fees until they had reached agreement "on all of the substantive provisions" of the SACD. ECF No. 285 at 14.

Class counsel conducted substantial work investigating conditions at the Jail prior to entering into settlement talks with defendants. They note that they disagree with defendants as to whether defendants have substantially complied with the ACD. If class counsel opted to ask the court to find that defendants had not substantially complied, the court could have sided with defendants and declined to extend the ACD past its January 30, 2023 expiration date. In the meantime, inmates would continue to suffer due to what plaintiffs' counsel characterizes as mental health treatment inadequacies and suicide prevention failures at the Jail; plaintiffs' counsel notes that two inmates killed themselves within a three-month period at the end of 2021.

Despite their substantial work on the matter, plaintiffs' counsel had less-fully-developed evidence of defendants' noncompliance in other areas covered by the ACD, such as those concerning exercise, medical and dental care, disability accommodations, and inmate grievances. This lack of evidence increased the risk that plaintiffs would lose a motion to extend the duration of the ACD. Thus, the SACD presents a reasonable bargain to include and enhance the provisions on which plaintiff's believed they had good evidence that defendants needed to do better at the expense of issues on which plaintiffs' case for compelling action by defendants was weaker.

There is no indication that the parties have colluded; rather, they have engaged in serious negotiations for several months to reach agreement on the SACD. Plaintiffs' counsel is highly experienced in prisoner civil rights litigation, including complex class actions, and their efforts in litigating the case over the last several years reflect that. Their experience and evident competence are further indications that the compromise they have reached with defendants is a fair one.

In light of the foregoing considerations, the court finds that the settlement is fair, adequate, and reasonable, despite the objections raised by Ms. Abbott and Ms. Keeton. These objections are focused on the central compromise reached by the parties – reducing the scope of the consent decree in exchange for additional years of the County being bound by its provisions (some enhanced) concerning mental health care at the Jail. While it may have been optimally beneficial to class members to continue with the ACD as it was, that agreement was set to expire. The compromise plaintiffs' counsel made with defendants by dropping some of the ACD's provisions was not made for nothing; in exchange the class receives additional years of protections from the SACD without having to litigate to obtain them.

### III. Order

Accordingly, it is hereby ORDERED that:

1. The parties' June 13, 2023 Joint Motion for Final Approval of Second Amended Consent Decree (ECF No. 285) is GRANTED.
2. The court approves the Notice of the Second Amended Consent Decree provided with the parties' June 13, 2023 motion (attached as Exhibit A).
3. No later than 15 days after the entry of this order, defendants shall post the Notice of the Second Amended Consent Decree, attached as Exhibit B, in the booking area of the Jail and in a place where all incarcerated people being booked into the Jail can see it, in all housing units, in the Jail's library, in the area of the Jail where defendants provide mental health care to incarcerated people, and in the Jail Handbook. Defendants shall ensure that one or more copies of the SACD are available to class members in the Jail's library and shall make additional copies available to class members upon request.
4. This case shall remain open and the court shall retain jurisdiction to enforce the terms of the Second Amended Consent Decree for the term and under the conditions set forth in sections XI and XII of the Second Amended Consent Decree. Once the matter is terminated under those provisions, this case shall be ordered dismissed with prejudice.

5. This order shall apply to defendants, their agents, employees, and successors in office.

Dated: September 13, 2023

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE