1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| DERRIL HEDRICK, DALE ROBINSON, KATHY LINDSEY, MARTIN C. CANADA, DARRY TYRONE PARKER, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>     v.<br><br>JAMES GRANT, as Sheriff of Yuba County; Lieutenant FRED J. ASBY, as Yuba County Jailer; JAMES PHARRIS, ROY LANDERMAN, DOUG WALTZ, HAROLD J. "SAM" SPERBEK, JAMES MARTIN, as members of the YUBA COUNTY BOARD OF SUPERVISORS,<br><br>       Defendants. | Case No. 2:76-CV-00162-EFB<br><br>**STIPULATION AND [~~PROPOSED~~] ORDER REGARDING EXTENSION OF SECOND AMENDED CONSENT DECREE ("SACD") AND MONITORING OF DEFENDANTS' COMPLIANCE WITH SACD**<br><br>Judge:  Edmund F. Brennan<br><br>Trial Date:     None Set |

[4624746.1]

1  On September 13, 2023, United States Magistrate Judge Edmund F. Brennan

2  granted final approval to a Second Amended Consent Decree ("SACD") covering certain

3  operations of the Yuba County Jail (the "Jail").  Since then, a third-party monitor

4  ("Monitor") has monitored compliance with the SACD pursuant to Section VIII of the

5  SACD.  To date, the Monitor has issued three final reports and has circulated a draft of a

6  fourth report pursuant to Section VIII.D of the SACD.

7  As relevant here, the SACD states that it "shall terminate on January 31, 2025,

8  unless prior to December 1, 2024, Plaintiffs file a motion to extend the term of the SACD."

9  ECF No. 289-2 at 42.[1]  The SACD further provides that this December 1, 2024 deadline

10  shall be extended in the event the Monitor does not issue a fourth report by November 15,

11  2024, and that the length of this extension shall be "the number of days by which the

12  Monitor's fourth report exceeds the November 15, 2024 deadline."  *Id.*  The Parties agree

13  that, because the Monitor has not yet finalized and issued a fourth report, the precise

14  deadline for a motion to extend the SACD is not yet certain.

15  Consistent with the meet-and-confer requirements in section XII of the SACD, as

16  modified by the Parties' stipulations, *see* ECF Nos. 291 & 293, Plaintiffs notified

17  Defendants in writing of the provisions in the SACD that Plaintiffs contend Defendants

18  have not substantially complied, and the parties and the Monitor then met and conferred in

19  good faith for the purpose of resolving the parties' disputes about Plaintiffs' contentions.

20  As a result of these discussions, the parties have agreed to extend the term of the

21  SACD for eighteen months, until July 31, 2026.  In addition, as set forth in Exhibit B,

22  which is attached hereto and which the parties intend to become Exhibit B to the SACD,

23  the parties have also agreed that the Monitor will no longer monitor Defendants'

24  compliance with certain provisions of the SACD.  The Parties agree that the narrowing of

25  provisions monitored by the Monitor is reasonable given the Monitor's findings, in

26  monitoring reports issued on September 5 and December 30, 2023, and August 1, 2024,

27

28  [1] All pincites refer to ECF pagination.

1  that Defendants have shown substantial compliance with certain provisions of the SACD.

2  In addition, the Parties agreed to a Revised Exhibit A, attached hereto, which is a modified

3  list of documents that Defendants must produce on a quarterly basis to the Monitor and

4  Plaintiffs' counsel.

5        NOW THEREFORE, IT IS HERBY STIPULATED AND AGREED by and

6  between the parties to this action, through their undersigned counsel, as follows:

7        1.      Page 29, lines 8 and 9 of the SACD, are hereby replaced by the following

8  language:

9        The Monitor's role is to assess and advise the parties and the Court

10       concerning whether the Jail is in substantial compliance with the terms and

11       conditions of the SACD, consistent with Exhibit B.

12       2.      Section VIII.A.5 of the SACD is hereby replaced by the following language:

13       Investigate complaints relating to Defendants' compliance with the SACD,

14       consistent with Exhibit B.

15       3.      The first sentence of Section VIII.D of the SACD is hereby replaced by the

16 following language:

17       Within thirty (30) days of each monitoring tour, the Monitor shall issue a

18       draft monitoring report that states his or her opinion as to whether Defendants are in

19       substantial compliance with the terms of the SACD and shall, consistent with

20       Exhibit B, identify those provisions, if any, with which Defendants are not in

21       substantial compliance.

22       4.      Section VIII.E (Investigation of Complaints) of the SACD is hereby replaced

23 by the following language:

24       The Monitor shall, consistent with Exhibit B, investigate relevant complaints

25       or reports relating to Jail conditions related to the SACD received from class

26       members or from Class Counsel.  Class members may submit complaints or other

27       information about conditions at the Jail directly to the Monitor, who shall,

28       consistent with Exhibit B, then investigate any relevant issues raised by the class

STIPULATION AND [PROPOSED] ORDER REGARDING EXTENSION OF SECOND AMENDED CONSENT
DECREE ("SACD") AND MONITORING OF DEFENDANTS' COMPLIANCE WITH SACD

1    member or class members.  Defendants shall cooperate in good faith with the

2    Monitor's investigations.  The Monitor shall, consistent with Exhibit B, identify the

3    resolution of any complaints in the monitoring reports.  Nothing in the SACD shall

4    be interpreted as precluding Class Counsel from conducting their own

5    investigations of complaints related to Defendants' compliance with the SACD.

6        5.    The second sentence of Section VIII.G of the SACD is hereby replaced by

7    the following language:

8            Except as otherwise set forth in Exhibit B, nothing in the SACD shall be

9    interpreted as limiting Class Counsel's ability to represent the Class in this matter or

10   to monitor Defendants' compliance with the SACD.

11       6.    Section XII of the SACD is hereby replaced by the following language:

12           The SACD shall terminate on July 31, 2026, unless prior to June 1, 2026,

13   Plaintiffs file a motion to extend the term of the SACD, in which case the SACD

14   shall remain in place until the Court rules on Plaintiffs' motion. If the Monitor does

15   not file its seventh monitoring report by May 15, 2024, then Plaintiffs' deadline for

16   filing a motion to extend the term of the SACD shall be extended by the number of

17   days by which the Monitor's seventh report exceeds the May 15, 2024 deadline.

18           By no later than February 1, 2026, the parties shall meet and confer

19   regarding whether Defendants are not in substantial compliance with all or part of

20   the SACD. Prior to the meet and confer, Plaintiffs shall, in writing, provide

21   Defendants with notice of any provisions of the SACD with which Plaintiffs

22   contend Defendants are not in substantial compliance. At the meet and confer, the

23   parties shall in good faith attempt to resolve any disputes about compliance. The

24   Monitor shall attend and participate in the meet and confer. If the parties are unable

25   to reach agreement, the parties shall also meet and confer regarding a discovery

26   plan in connection with a motion to extend the term of the SACD.

27           Except as set forth in Exhibit B, nothing in this Second Amended Consent

28   Decree shall limit the parties' rights to challenge or appeal any finding as to

[4624746.1]

1  whether Defendants are not in substantial compliance with the Second Amended

2  Consent Decree or consequent orders entered by the District Court.

3     7.     The first paragraph of Section VIII.C of the SACD is hereby replaced by the

4  following language:

5          The Monitor has already conducted four monitoring tours.  The Monitor

6      shall conduct the fifth monitoring tour by no later than February 15, 2025, shall

7      conduct the sixth monitoring tour by no later than August 15, 2025, and the seventh

8      monitoring tour by no later than February 15, 2026.

9     8.     The second paragraph of Section VIII.D of the SACD is hereby replaced by

10 the following language:

11         The Monitor shall issue a minimum of seven (7) monitoring reports.  The

12     Monitor has already issued three monitoring reports and, on November 14, 2024,

13     provided the parties with a draft of the fourth monitoring report.  The Monitor shall

14     issue the fifth monitoring report by no later than May 15, 2025, shall issue the sixth

15     monitoring report by no later than November 15, 2025, and shall issue the seventh

16     monitoring report by no later than May 15, 2026.

17    9.     Exhibit A to the SACD is hereby replaced by the attached Revised

18 Exhibit A. In addition, all references to Exhibit A in the SACD shall be replaced by

19 references to Revised Exhibit A.

20    10.    Exhibit B, attached hereto, is now Exhibit B to the SACD.

21    11.    The parties agree that this Stipulation and ~~Proposed~~ Order shall, pursuant to

22 Section XII of the SACD, have the same effect as if Plaintiffs had filed a motion to extend

23 the terms of the SACD, such that the SACD will remain in place until the Court rules on

24 this Stipulation and [~~Proposed~~] Order.  If the Court does not enter the order but provides

25 the parties with an opportunity to submit a revised stipulation or a motion, the parties agree

26 that (1) the SACD will remain in place until any deadline for submitting a revised

27 / / /

28 / / /

1   stipulation or a motion has passed and, (2) if the parties or Plaintiffs submit a revised

2   stipulation or a motion before any deadline has passed, the SACD will remain in place

3   until the Court rules on the revised stipulation or a motion.

4        IT IS SO STIPULATED.

5

6   DATED:  January __2__, 2025          ROSEN BIEN GALVAN & GRUNFELD LLP

7                                        By:  /s/ Michael Freedman

8                                             Michael Freedman

9                                        Attorneys for Plaintiffs

10

11  DATED:  January __2__, 2025          KING HALL CIVIL RIGHTS CLINIC, U.C.
                                         DAVIS SCHOOL OF LAW
12

13                                       By:  /s/ Carter White

14                                            Carter White

15                                       Attorneys for Plaintiffs

16

17  DATED:  January __2__, 2025          PORTER SCOTT, P.C.

18                                       By:  _____

19                                            Carl Fessenden

20                                       Attorneys for Defendants

21

22  DATED:  January __2__, 2025          OFFICE OF THE YUBA COUNTY COUNSEL

23                                       By:  _____

24                                            Patricia Spaletta

25                                       Attorneys for Defendants

26

27

28

1                                 **[~~PROPOSED~~] ORDER**

2        Pursuant to the foregoing stipulation of the parties, IT IS SO ORDERED:

3        1.      Page 29, lines 8 and 9 of the SACD, are hereby replaced by the following

4 language:

5             The Monitor's role is to assess and advise the parties and the Court

6        concerning whether the Jail is in substantial compliance with the terms and

7        conditions of the SACD, consistent with Exhibit B.

8        2.      Section VIII.A.5 of the SACD is hereby replaced by the following language:

9             Investigate complaints relating to Defendants' compliance with the SACD,

10        consistent with Exhibit B.

11        3.      The first sentence of Section VIII.D of the SACD is hereby replaced by the

12 following language:

13             Within thirty (30) days of each monitoring tour, the Monitor shall issue a

14        draft monitoring report that states his or her opinion as to whether Defendants are in

15        substantial compliance with the terms of the SACD and shall, consistent with

16        Exhibit B, identify those provisions, if any, with which Defendants are not in

17        substantial compliance.

18        4.      Section VIII.E (Investigation of Complaints) of the SACD is hereby replaced

19 by the following language:

20             The Monitor shall, consistent with Exhibit B, investigate relevant complaints

21        or reports relating to Jail conditions related to the SACD received from class

22        members or from Class Counsel.  Class members may submit complaints or other

23        information about conditions at the Jail directly to the Monitor, who shall,

24        consistent with Exhibit B, then investigate any relevant issues raised by the class

25        member or class members.  Defendants shall cooperate in good faith with the

26        Monitor's investigations.  The Monitor shall, consistent with Exhibit B, identify the

27        resolution of any complaints in the monitoring reports.  Nothing in the SACD shall

28        be interpreted as precluding Class Counsel from conducting their own

1   investigations of complaints related to Defendants' compliance with the SACD.

2   5.      The second sentence of Section VIII.G of the SACD is hereby replaced by

3   the following language:

4           Except as otherwise set forth in Exhibit B, nothing in the SACD shall be

5           interpreted as limiting Class Counsel's ability to represent the Class in this matter or

6           to monitor Defendants' compliance with the SACD.

7   6.      Section XII of the SACD is hereby replaced by the following language:

8           The SACD shall terminate on July 31, 2026, unless prior to June 1, 2026,

9   Plaintiffs file a motion to extend the term of the SACD, in which case the SACD

10  shall remain in place until the Court rules on Plaintiffs' motion. If the Monitor does

11  not file its seventh monitoring report by May 15, 2024, then Plaintiffs' deadline for

12  filing a motion to extend the term of the SACD shall be extended by the number of

13  days by which the Monitor's seventh report exceeds the May 15, 2024 deadline.

14          By no later than February 1, 2026, the parties shall meet and confer

15  regarding whether Defendants are not in substantial compliance with all or part of

16  the SACD. Prior to the meet and confer, Plaintiffs shall, in writing, provide

17  Defendants with notice of any provisions of the SACD with which Plaintiffs

18  contend Defendants are not in substantial compliance. At the meet and confer, the

19  parties shall in good faith attempt to resolve any disputes about compliance. The

20  Monitor shall attend and participate in the meet and confer. If the parties are unable

21  to reach agreement, the parties shall also meet and confer regarding a discovery

22  plan in connection with a motion to extend the term of the SACD.

23          Except as set forth in Exhibit B, nothing in this Second Amended Consent

24  Decree shall limit the parties' rights to challenge or appeal any finding as to

25  whether Defendants are not in substantial compliance with the Second Amended

26  Consent Decree or consequent orders entered by the District Court.

27  7.      The first paragraph of Section VIII.C of the SACD is hereby replaced by the

28  following language:

[4624746.1]

STIPULATION AND [PROPOSED] ORDER REGARDING EXTENSION OF SECOND AMENDED CONSENT
DECREE ("SACD") AND MONITORING OF DEFENDANTS' COMPLIANCE WITH SACD

1        The Monitor has already conducted four monitoring tours.  The Monitor

2 shall conduct the fifth monitoring tour by no later than February 15, 2025, shall

3 conduct the sixth monitoring tour by no later than August 15, 2025, and the seventh

4 monitoring tour by no later than February 15, 2026.

5      8.    The second paragraph of Section VIII.D of the SACD is hereby replaced by

6 the following language:

7        The Monitor shall issue a minimum of seven (7) monitoring reports.  The

8 Monitor has already issued three monitoring reports and, on November 14, 2024,

9 provided the parties with a draft of the fourth monitoring report.  The Monitor shall

10 issue the fifth monitoring report by no later than May 15, 2025, shall issue the sixth

11 monitoring report by no later than November 15, 2025, and shall issue the seventh

12 monitoring report by no later than May 15, 2026.

13     9.    Exhibit A to the SACD is hereby replaced by the attached Revised

14 Exhibit A. In addition, all references to Exhibit A in the SACD shall be replaced by

15 Revised Exhibit A.

16    10.    Exhibit B, attached hereto, is now Exhibit B to the SACD.

17    IT IS SO ORDERED.

18

19 DATED:  January 13, 2025

20 EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28

[4624746.1]

8

STIPULATION AND [PROPOSED] ORDER REGARDING EXTENSION OF SECOND AMENDED CONSENT
DECREE ("SACD") AND MONITORING OF DEFENDANTS' COMPLIANCE WITH SACD

# Revised Exhibit A

**Quarterly Document Production**

- A list, generated on the last day of each month in the quarter, of all incarcerated people who are on the mental health case load

- A list, generated on the last day of each month in the quarter, of all incarcerated who are prescribed psychotropic medication

- Check Sheets prepared by the County and Wellpath for following cells:

  Safety/Isolation Cells; Sobering Cells; Holding Cells; Step-Down Cells.  This item does not require production of checksheets completed  by custody staff.

- All memoranda documenting late safety and security checks on people in safety and Step-Down.  This item does not require production of memoranda for late safety and security checks by custody staff

- Mental Health Sick Call Logs for the 2d, 5th, 13th, 14th, 18th, 24th, 26th, and 30th of each month

- Quarterly Analysis for QA Meetings that relate to mental health care or any other issues covered by the Second Amended Consent Decree.

- Wellpath Staffing Reports created for the county, if any

- Random Selection of Monthly Intake Health Screenings consisting of 10% of all forms completed each quarter, unless Plaintiffs make a showing that an additional number shall be produced for a certain month

- All non-confidential or non-attorney-client Death in Custody Reports and Morbidity & Mortality Reports and meeting minutes

- All non-confidential or non-attorney-client privileged Quality Assurance and/or Quality Improvement documents, if provided to the county, that are related to the provision of mental health care or any other issues covered by the Second Amended Consent Decree. These may include Wellpath morbidity and mortality reports.

- Quarterly assessment of the timeliness of providing sick call services for mental health-related requests

- Complete set of all County and Wellpath Policies related to mental health care or any other issues covered by the Second Amended Consent Decree that were updated within the last quarter

- Logs of all prisoners found incompetent to stand trial showing how long they have been at the Jail

- A monthly point in time snapshot list of incarcerated people placed in Administrative Segregation during the quarter generated on the last day of each month in the quarter

- 25% of Classification Reports during the quarter for incarcerated people placed or retained in Administrative Segregation

- 100% of clearance forms received by Wellpath from Rideout or other local hospitals allowing the return of incarcerated people to the jail after emergency mental health treatment

- Referral Forms generated by Wellpath when transferring incarcerated people to an inpatient psychiatric or other mental health facility or local hospital for emergency or mental health care

- Documents reflecting the involuntary administration of psychotropic medications

- 25% of logs documenting Wellpath Mental Health Rounds in Administrative Segregation, unless Plaintiffs make a showing that an additional number shall be produced for a certain month

- A list of all incarcerated people referred to tele-psychiatry

- Update regarding Defendants' efforts to create and fund a more expansive medication-assisted treatment program

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

10

| | |
|---|---|
| DERRIL HEDRICK, DALE ROBINSON, KATHY LINDSEY, MARTIN C. CANADA, DARRY TYRONE PARKER, individually and on behalf of all others similarly situated, | Case No. 2:76-CV-00162-EFB |
| | **EXHIBIT B TO THE SACD** |
| Plaintiffs, | Judge:  Edmund F. Brennan |
| v. | |
| JAMES GRANT, as Sheriff of Yuba County; Lieutenant FRED J. ASBY, as Yuba County Jailer; JAMES PHARRIS, ROY LANDERMAN, DOUG WALTZ, HAROLD J. "SAM" SPERBEK, JAMES MARTIN, as members of the YUBA COUNTY BOARD OF SUPERVISORS, | |
| Defendants. | |

[4624748.1]

1.   Except as otherwise provided in this Exhibit B, the Monitor shall not monitor, review documents, or otherwise investigate, or reference in any report, or report on complaints that are solely relevant to:

    a.   A provision of the SACD with which the Monitor found that Defendants were substantially compliant in the first, second and third monitoring reports;[1] OR

    b.   A provision of the SACD with which the Monitor found that Defendants were substantially compliant in:

        i.   the third and fourth monitoring reports; AND

        ii.   in either the first or second monitoring reports;[2] OR

    c.   Section IV.D, paragraph 4; Section V.A, paragraph 1; or Section V.C, paragraph 10, as applied to custody staff.[3]

2.   The Monitor shall continue to monitor, review documents, investigate complaints related to, and report on compliance with Section III.B and Section IV.B.4, paragraph 4, of the SACD, notwithstanding the fact that the requirements of

---

[1] The provisions of the SACD that meet this requirement are: III.B; IV.A, paragraph 2; IV.A, paragraph 5; IV.B.1, paragraph 2; IV.B.4, paragraph 4; IV.B.4, paragraph 5; IV.B.5, paragraph 3; IV.B.5, paragraph 5; IV.B.6, paragraph 4; IV.B.6A, paragraph 2; IV.B.6A, paragraph 3; IV.B.6A, paragraph 4; IV.B.7, paragraph 3; IV.B.8, paragraph 1; IV.B.8, paragraph 2; IV.B.8, paragraph 3; IV.B.9, paragraph 1; IV.B.9, paragraph 2; IV.C; V.C, paragraph 1; V.C, paragraph 2; V.C, paragraph 4; V.C, paragraph 5; V.C, paragraph 8; V.C, paragraph 11; V.C, paragraph 12; V.C, paragraph 14; V.C, paragraph 15; V.C, paragraph 16; V.D, paragraph 1; V.D, paragraph 2; V.D, paragraph 6; VII, paragraph 1; VII, paragraph 2; VII.A, paragraph 2; VII.A, paragraph 4; VII.A, paragraph 5; VII.A, paragraph 6; VII.A, paragraph 7; VII.A, paragraph 8; VII.A, paragraph 9.

[2] Since the Monitor has not yet issued the fourth monitoring report, it is not possible at the time the parties entered into this Agreement to specify which provisions of the SACD meet this requirement.  Once the Monitor issues the fourth monitoring report, the parties will meet and confer to identify the provisions of the SACD that meet this requirement. **Attachment 1**, attached hereto, reflects the parties' understanding of the Monitor's compliance findings in the first, second, and third monitoring reports.

[3] The parties agree that the term "review" in Section V.C, paragraph 10, does not require all three disciplines (medical, mental health, and custody) to physically "meet" and/or "discuss" every 13 hours whether it is appropriate for an incarcerated person to remain in a safety cell.

Paragraph 1.a of this Exhibit B are satisfied with respect to those provisions.

3.       If Plaintiffs have a good faith basis to contend that Defendants are systemically non-compliant with a provision that has been removed from monitoring pursuant to paragraph 1 of this Exhibit B, Plaintiffs shall notify Defendants in writing.  Within 21 days of receiving written notice, the Parties shall meet and confer regarding the issues raised in the notice.  If the dispute remains unresolved, within 14 days of the last meet and confer regarding the dispute, Plaintiffs may file a motion with The Honorable Kendall J. Newman, Ret., who will sit as an arbitrator regarding the dispute.[4]  Within 10 days of that filing, Defendants shall provide the arbitrator with a written response.  Either party can request a hearing before the arbitrator.  Within 30 days of a hearing, or the last filing before the arbitrator, the arbitrator will issue a written decision regarding whether there is systematic non-compliance with the disputed provision. If the arbitrator finds systematic non-compliance with the provision, that provision shall no longer be subject to the limitations in Paragraph 1 of this Exhibit B on investigating, and monitoring; the Monitor shall resume monitoring and reporting on Defendants' compliance with the provision; and Defendants shall, if applicable, be required to produce on a quarterly basis those documents removed from former Exhibit A that are now relevant to those provisions on which monitoring has been restarted.  The arbitrator's decision shall be final, binding, and not appealable.  Defendants shall bear all costs for the arbitration.

4.       Nothing in this Agreement shall be construed to limit the authority granted to the Monitor by the SACD to investigate, monitor, and/or report on the whether Defendants provide timely access to inpatient and outpatient mental health care as

---

[4] In the unlikely event that Judge Newman informs the Parties he is unavailable to arbitrate the matter due to unforeseen circumstances and/or a conflict lasting 30 days or more, the Parties shall mutually agree upon a one-time alternate arbitrator to resolve the dispute.

1   needed, as required by Section IV.B.6 of the SACD.

2   5.   Class Counsel shall not affirmatively monitor Defendants' compliance with

3       provisions that meet the requirements of paragraph 1 of this Exhibit B and that are

4       not listed in paragraph 2 of this Exhibit B.  However, nothing in this Agreement

5       shall be construed to limit the authority granted to Plaintiffs by the SACD or any

6       other law to investigate Defendants' compliance or lack thereof with any provision

7       in the SACD, including the authority to request relevant documents and information

8       from Defendants.  Any time, expenses, costs incurred by Class Counsel to

9       investigate Defendants' compliance with any provision of the SACD shall be

10      considered time, expenses, or costs incurred "representing the Class," as that term is

11      used in Section X of the SACD.

# Attachment 1

# Index of Monitor's Reports' Compliance Ratings

| Section | Subject | SACD Text | 1st Rprt Compliance Rating | 2d Rprt Compliance Rating | 3d Rprt Compliance Rating |
|---|---|---|---|---|---|
| 3 | Staffing | | | | |
| 3.A | Health Personnel | A Physician, NP, PA, and/or RN must be physically present at the Jail twenty-four (24) hours per day, seven (7) days per week. | SC | SC | PC |
| 3.B | Psychiatrists | The Jail shall employ a psychiatrist or psychiatrists to provide mental health services at the Jail. Psychiatry services will be available three (3) days per week, eight (8) hours per day. a)The three (3) days of psychiatry services shall not be provided on three (3) consecutive days (e.g., Monday, Tuesday, Wednesday). b)The Jail may use a telepsychiatry program or an on-site psychiatrist to provide these services, provided Defendants' use of telepsychiatry is consistent with this SACD and the telepsychiatry protocol entitled Wellpath Yuba County California Policies & Procedures 80874 and dated July 15, 2020. | SC | SC | SC |
| 3.C.1 | Employment of LCSW, LMFT, LPCC, AMFT, ACSW, APCC | The Jail shall employ: a)Licensed Clinical Social Workers ("LCSWs"), b)Licensed Marriage and Family Therapists ("LMFTs"), c)Licensed Professional Clinical Counselors ("LPCCs"), d)Associate Marriage and Family Therapists ("AMFTs"), e)Associate Clinical Social Workers ("ACSWs"), and/or f)Associate Professional Clinical Counselors ("APCCs"). The Jail shall employ LCSWs, LMFTs, LPCCs, AMFTs, ASWs, and/or APCCs for a total of eighty (80) hours per week and at least eight (8) hours per day. At least forty (40) of the eighty (80) hours per week shall be provided by LCSWs, LMFTs, and LPCCs. | SC | PC | SC |

| Section | Subject | SACD Text | 1st Rprt Compliance Rating | 2d Rprt Compliance Rating | 3d Rprt Compliance Rating |
|---|---|---|---|---|---|
| 3.C.2 | Duties of LCSW, LMFT, LPCC, AMFT, ACSW, APCC | Individuals in these positions must be able to provide mental health screenings for those identified as possibly needing mental health services, conduct psychosocial assessments to include a mental status examination and diagnosis, conduct suicide risk assessments, develop treatment plans, provide psychosocial therapy as clinically indicated with the intent of coordinating care beyond the walls of the Jail and into the community upon release, refer incarcerated persons for psychiatric evaluation to determine if psychotropic medication is needed, conduct mental health evaluations to determine whether an incarcerated person should be placed in or removed from a safety cell or transferred to a psychiatric hospital, and coordinate care with custody and medical staff as necessary. <br><br>a)An AMFT, ASW, or APCC shall not approve the removal of an incarcerated person from a safety or step-down cell unless the AMFT, ASW, or APCC first confers with a psychiatrist, LMFT, LCSW, or LPCC who approves the decision. <br>b)A psychiatrist, LMFT, LSW, or LPCC must be available for such conferences at all times during which an AMFT, ASW, or APCC is working in the Jail. <br>c)Any conference between an AMFT, ASW, or APCC and a psychiatrist, LMFT, LSW, or LPCC regarding removing someone from a safety or step-down cell shall be documented in the incarcerated person's medical record. | PC | PC | PC |
| 4 | MH Care | | | | |
| 4.A.1 | Booking Screening for MH needs | Defendants' Intake and Booking Screening Plan shall include standards and timelines to ensure that arriving incarcerated persons are promptly screened for urgent and emergent mental health needs by a PA, NP, or RN in an area that provides for confidentiality. <br>Translators and interpreters will be used whenever necessary to ensure effective communication. | SC | SC | PC |
| 4.A.2 | Need for Referral to Acute Facility | As part of the intake process, the PA/NP/RN shall assess whether an arriving incarcerated person must be excluded from the Jail and sent for mental health evaluation and treatment to Rideout Hospital, Sutter-Yuba Behavioral Health Services, or to comparable facilities. <br>The PA/NP/RN shall also review the Jails' medical records to determine if the person has a history of mental illness and/or substance abuse. | SC | SC | SC |

| Section | Subject | SACD Text | 1st Rprt Compliance Rating | 2d Rprt Compliance Rating | 3d Rprt Compliance Rating |
|---|---|---|---|---|---|
| 4.A.3 | Screening for Withdrawal | The PA/NP/RN must also assess whether an arriving incarcerated person is intoxicated and/or suffering from withdrawal or is at high risk for withdrawal from alcohol or other drugs. a)Only after the examining PA/NP/RN certifies that the new arrestee is fit for incarceration may the arrestee be incarcerated. b)Incarcerated persons who display signs of non-acute alcohol or drug intoxication or withdrawal will be accepted into the Jail and will be treated in accordance with Wellpath's policy, entitled HCD-110_F-04 Medically Supervised Withdrawal and Treatment, Policy #77029, and dated February 17, 2021. | PC | PC | PC |
| 4.A.4 | MAT | Defendants shall continue treating newly-booked incarcerated people with medication-assisted treatment ("MAT") if medical staff determine MAT is medically necessary for the person (e.g., pregnant women who are taking MAT upon booking). Defendants shall explore ways to create and fund a program to initiate MAT for incarcerated people and to continue MAT for people booked into the Jail who were receiving MAT in the community but for whom MAT is not medically necessary.

Defendants shall provide an update to Plaintiffs on a quarterly basis regarding its efforts to create and fund this more expansive MAT program. The update shall be included in the quarterly document production. | PC | PC | PC |
| 4.A.5 | Documentation of clearance from MH facility | The mental health condition of a new arrestee found fit for incarceration by an examining health care professional, but requiring mental health care, shall be considered when making housing decisions. | SC | SC | SC |
| 4.A.6 | Housing and MH condition | The mental health condition of a new arrestee found fit for incarceration by an examining health care professional, but requiring mental health care, shall be considered when making housing decisions. | SC | PC | PC |

| Section | Subject | SACD Text | 1st Rprt Compliance Rating | 2d Rprt Compliance Rating | 3d Rprt Compliance Rating |
|---|---|---|---|---|---|
| 4.A.7 | Suicide Risk Assessment - Urgency of Assessments | Any new arrestee who states that he or she has a mental illness or who the medical booking staff identifies as having a mental illness or knows is receiving care from the Sutter-Yuba Behavioral Health Services, or other similar provider of behavioral healthcare services, must be seen by a Qualified Mental Health Professional within policy timeframes:<br>a)emergent referrals are addressed immediately.<br>b)urgent referrals are addressed within twenty-four (24) hours.<br>c)routine referrals are addressed within seven (7) days.<br>As part of the intake screening, medical staff shall review the incarcerated person's Jail medical record to determine if records from any prior incarcerations in the Jail reflect issues related<br>a)Medical staff shall consider any relevant information gathered from the medical record review when determining if and how quickly a new arrestee shall be seen by Qualified Mental Health Professional. | SC | PC | PC |
| 4.A.8 | Suicide Risk Assessment - Staff Performing Assessments | Any new arrestee accepted into the Jail who the booking medical staff identifies as<br>having any current suicidality shall have a risk assessment completed as soon as possible.<br>a)Only Qualified Mental Health Professionals, PAs, NPs, or RNs who have been trained regarding how to conduct a suicide risk assessment shall conduct such assessments. urgent referrals are addressed within twenty-four (24) hours<br>b)A suicide risk assessment shall be conducted by a Qualified Mental Health Professional if one is on-site at the jail.<br>c)A suicide risk assessment may be conducted by a PA, NP, or RN if no Qualified Mental Health Professional is on-site at the Jail or there is no Qualified Mental Health Professional available to timely complete the assessment due to servicing the urgent needs of other incarcerated persons.<br>d)If the PA, NP or RN conducts the risk assessment, within two (2) hours after administering a suicide risk assessment, the staff member who conducted the assessment must consult with a Qualified Mental Health Professional (either on-site or by phone) to determine an appropriate plan of treatment and the appropriate level, if any, of suicide precaution.  If the person is placed on suicide watch, safety cell protocol will be followed.<br>e)If the suicide risk assessment establishes that the incarcerated person is at risk of suicide, the incarcerated person will, at minimum, be placed on the next psychiatrist sick call.<br>f)The Qualified Mental Health Professional who conducts the suicide risk assessment or with whom the PA, NP, or RN who conducted the assessment consults, can, if necessary, consult with an on-site (if available) or on-call psychiatrist at any time, refer the incarcerated person to be seen by a psychiatrist before the next psychiatrist sick call, or cause the incarcerated person to be transferred to a hospital for evaluation. | SC | SC | PC |
| 4.B | Access to MH Care | | | | |
| 4.B.1 | Initial MH Assessment | | | | |

| Section | Subject | SACD Text | 1st Rprt Compliance Rating | 2d Rprt Compliance Rating | 3d Rprt Compliance Rating |
|---------|---------|-----------|---------------------------|---------------------------|---------------------------|
| 4.B.1.1 | MH Assessment Conucted Within 14 Days | As part of the initial health assessment required by Title 15 that must be conducted within fourteen (14) days of booking, the Jail shall conduct a mental health assessment of all newly-incarcerated persons, unless an earlier assessment has been conducted by a Qualified Mental Health Professional pursuant to Section IV.A.<br><br>a)If, during the 14-day mental health assessment, the incarcerated person states that he or she has a mental illness or is taking psychiatric medications, or if the medical booking staff otherwise identifies the person as having a mental illness or knows the person is receiving care from the Sutter-Yuba Behavioral Health Services or other similar provider of behavioral healthcare services, then the Jail will see the person at the next mental health sick call.<br>b)As part of the initial health assessment, medical staff shall conduct a full review of the incarcerated person's Jail mental health records to determine if records from any prior incarcerations in the Jail reflect issues related to mental health.<br>c)Medical staff shall consider any relevant information gathered from the medical record review when determining if and how quickly a new arrestee shall be referred for mental health services. | SC | PC | PC |
| 4.B.1.2 | Medical Files Open at Assessment | A medical file must be opened for each incarcerated person at the time of assessment.<br>a)Incarcerated persons must be advised at the commencement of the mental health assessment that they have a right to such an assessment but that they also have a right to refuse all or any portion of the assessment.<br>b)The health assessment must also include an oral explanation of the health services available.<br>c)Provision shall be made to communicate this information to non-English speaking incarcerated persons and to incarcerated persons with disabilities.<br>d)The incarcerated person shall also be informed that detailed mental health education information is available in pamphlet form. | SC | SC | SC |
| 4.B.2.1 | MH Care System | Defendants shall maintain a system of mental health care to provide services that resemble what is provided in the community, including developing treatment plans and providing therapy in confidential settings as clinically indicated, with appropriate language interpretation services, with the intent of coordinating care beyond the walls of the Jail and into the community upon release. | PC | PC | PC |

| Section | Subject | SACD Text | 1st Rprt Compliance Rating | 2d Rprt Compliance Rating | 3d Rprt Compliance Rating |
|---------|---------|-----------|----------------------------|---------------------------|---------------------------|
| 4.B.3.1 | Tx for Chronic MH Conditions | Defendants shall maintain systems for managing patient's with chronic mental health conditions through screening, identifying, monitoring, and providing treatment to these patient's while detained at the Jail. Any patient whose chronic mental health condition cannot be managed at the Jail will be transferred offsite for appropriate treatment and care. | PC | PC | PC |
| 4.B.4.1 | Continuity of Community-Prescribed MH Meds - Continuation | Continuation and bridging of all medications begun prior to incarceration is essential to the health and well-being of incarcerated persons. The Jail shall make its best effort to ensure that incarcerated persons will not miss any medications. | SC | SC | PC |
| 4.B.4.2 | Continuity of Community-Prescribed MH Meds - Review of Meds | All incarcerated persons who, at the time of booking, are prescribed mental health medications in the community, and it is verified those medication are currently being taken, a)shall be timely continued on those medications, or prescribed comparable appropriate medication, unless a physician, NP, PA, or psychiatrist makes a clinical determination, via a face-to-face assessment (which includes use of tele psychiatrist under appropriate standards and policies), b)that the medications are not necessary for treatment, c)and documents the clinical justification for discontinuing a community-prescribed medication. d)Defendants shall not discontinue community-prescribed psychiatric medications based solely on an incarcerated person's history of substance abuse. | SC | SC | PC |
| 4.B.4.3 | Continuity of Community-Prescribed MH Meds - Unverified Meds | Any incarcerated person who, at the time of booking, reports to Defendants that he or she is taking medications in the community but his or her medications cannot be verified, a)shall be timely assessed by a physician, PA, NP, or psychiatrist b)and timely prescribed medications necessary to treat his or her mental health needs, to ensure continuity of care. c)If there is a question regarding the propriety of a medication, a physician, PA, NP, or psychiatrist must be contacted before the prescription medication is denied. | SC | PC | PC |
| 4.B.4.4 | Continuity of Community-Prescribed MH Meds - Request for Meds | At the time of booking, if an arrestee reports that he or she needs certain psychiatric medications, that person shall be seen at the next psychiatrist sick call, unless it is determined that the person cannot wait until then, in which case the person shall be sent promptly to an appropriate off-site facility for evaluation and treatment. | SC | SC | SC |

| Section | Subject | SACD Text | 1st Rprt Compliance Rating | 2d Rprt Compliance Rating | 3d Rprt Compliance Rating |
|---|---|---|---|---|---|
| 4.B.4.5 | Continuity of Community-Prescribed MH Meds - Monitoring of Meds | Incarcerated persons who are prescribed psychiatric medication by a physician, PA, NP, or psychiatrist, or who are continued on community-prescribed psychiatric mediation, a)will be re-evaluated by a psychiatrist every thirty (30) days until the condition is stable, b)then every thirty (30) to ninety (90) days at the clinical discretion of the psychiatrist. c)More frequent evaluations will be scheduled as determined by the incarcerated person's health care provider. | SC | SC | SC |
| 4.B.5.1 | Med Assistance for Intoxicated Incarcerated Persons - Assessment | If there is reasonable cause to believe that a person is experiencing or will soon be experiencing symptoms of withdrawal from a controlled substance or alcohol, the incarcerated person must be timely assessed and, if indicated, treated by a Qualified Medical Professional at the Jail or transported immediately to an appropriate hospital facility, such as Rideout Memorial Hospital. | SC | PC | PC |
| 4.B.5.2 | Med Assistance for Intoxicated Incarcerated Persons - Procedures | Detoxification from alcohol, opiates, hypnotics, other stimulants, and sedative hypnotic drugs, when performed in this facility, will be done under medical supervision in accordance with the Third-party Medical Provider's policies and protocols. MAT for withdrawal will be considered. | SC | SC | PC |
| 4.B.5.3 | Med Assistance for Intoxicated Incarcerated Persons - Checks | Custody staff shall conduct health and safety checks for those incarcerated persons placed in a sobering cell. a)Health and safety checks shall occur every 30 minutes at irregular and unpredictable intervals or more frequently if medical or mental health staff believe more frequent checks are necessary to protect the health and safety of an incarcerated person. | SC | SC | SC |
| 4.B.5.4 | Med Assistance for Intoxicated Incarcerated Persons - QMP Evals | A Qualified Medical Professional shall evaluate incarcerated persons in sobering cells upon admission and then every six (6) hours thereafter or sooner if requested by custody staff. a)Defendants shall keep complete, accurate, and contemporaneous logs of each health and safety check and shall review such logs for compliance. b)Sufficient custody staffing must also be maintained to allow medical staff to enter the sobering cells to make vital checks. | PC | PC | PC |

| Section | Subject | SACD Text | 1st Rprt Compliance Rating | 2d Rprt Compliance Rating | 3d Rprt Compliance Rating |
|---------|---------|-----------|---------------------------|---------------------------|---------------------------|
| 4.B.5.5 | Med Assistance for Intoxicated Incarcerated Persons - Transfers to Outside Facilities | Incarcerated persons experiencing severe, life-threatening intoxication (an overdose) or withdrawal which cannot be addressed in the Jail by available medical staff, shall be transferred under appropriate security conditions to a hospital or other facility where specialized care is available. | SC | SC | SC |
| 4.B.6.1 | MH Services - Minimum Tx | The Jail will ensure that incarcerated persons are provided timely access to inpatient, and outpatient mental health care as needed.  Mental health services at the Jail shall include, at a minimum, a)mental health screenings and evaluations, suicide risk assessments, diagnosis, and treatment – including psychosocial therapy, and psychotropic medications as needed, and referral services. b)While incarcerated persons are entitled to assessment and treatment, they must be informed that they are also entitled to refuse such treatment. Incarcerated persons requiring services beyond the on-site capability of the Jail shall be referred to appropriate off-site providers. | PC | PC | PC |

| Section | Subject | SACD Text | 1st Rprt Compliance Rating | 2d Rprt Compliance Rating | 3d Rprt Compliance Rating |
|---|---|---|---|---|---|
| 4.B.6.2 | MH Services - Suicide Risk Assessment | Any incarcerated person who, either during the booking process or at any time during their incarceration in the Jail, is identified as having any current suicidality shall have a suicide risk assessment completed within four (4) hours of the identification of current suicidality.<br>a)Only Qualified Mental Health Professionals, PAs, NPs, or RNs who have been trained regarding how to conduct a suicide risk assessment shall conduct such assessments.<br>b)A suicide risk assessment shall be conducted by a Qualified Mental Health Professional if one is on-site at the Jail.<br>c)A suicide risk assessment may be conducted by a PA, NP, or RN if no Qualified Mental Health Professional is on-site at the Jail or there is no Qualified Mental Health Professional available to timely complete the assessment due to servicing the urgent needs of other incarcerated persons.<br>d)If the PA, NP, or RN conducts the risk assessment, within two (2) hours after administering the risk assessment the staff member who conducted the assessment must consult with a Qualified Mental Health Professional (either on-site or by phone) to determine an appropriate plan of treatment and the appropriate level, if any, of suicide precaution.<br>e)If the person is placed on suicide watch, safety cell protocol will be followed. If the suicide risk assessment establishes that the incarcerated person is at risk of suicide, the incarcerated person will, at a minimum, be placed on the next psychiatrist sick call.<br>f)The Qualified Mental Health Professional who conducts the suicide risk assessment or with whom the PA, NP, or RN who conducted the assessment consults, can, if necessary, consult with an on-site (if available) or on-call psychiatrist at any time, refer the incarcerated person to be seen by a psychiatrist before the next psychiatrist sick call, or cause the incarcerated person to be transferred to a hospital for evaluation. | SC | PC | SC |
| 4.B.6.3 | MH Serices - Transfers to Outside Facilities | Qualified Mental Health Professionals shall evaluate whether an incarcerated person's mental illness or risk of suicide requires that he or she be sent to Sutter-Yuba Behavioral Health Services or an inpatient setting for evaluation and treatment, up to and including psychiatric hospitalization where warranted, and shall issue all suicide precaution orders including placement in or removal from housing for incarcerated persons at risk of suicide, and confidential follow-up assessments at clinically appropriate intervals. | SC | PC | SC |
| 4.B.6.4 | MH Services - Med & Custody Staff Conferenc | On a weekly basis a Qualified Mental Health Professional shall consult with Correctional Officers to exchange information with respect to the mental health of the incarcerated persons. The Qualified Mental Health Professional must respect the confidential nature of communications to him or her, but has an obligation to take steps to assure the safety of an incarcerated person who indicates that he or she may attempt to commit suicide or harm another. | SC | SC | SC |

| Section | Subject | SACD Text | 1st Rprt Compliance Rating | 2d Rprt Compliance Rating | 3d Rprt Compliance Rating |
|---|---|---|---|---|---|
| 4.B.6.5 | MH Services - Release Care | Whenever possible, custody staff shall provide medical staff with advanced notice of an incarcerated person's release from the Jail.<br>a)If medical staff receive sufficient notice of an incarcerated person's release, medical staff shall provide medical discharge planning to the person, including providing written instructions for continuity of essential care,<br>b)the name and contact information for community providers for follow-up appointments,<br>c)and a 28-day prescription for any chronic care or psychotropic medications the person was receiving at the time of release.<br>d)Defendants shall call the 28-day prescription into a local pharmacy and pay for seven (7) days of the medication(s). | PC | PC | PC |
| 4.B.6A.1 | Telepsych - WellPath Policies | Defendants shall adhere to the telepsychiatry protocol entitled Wellpath Yuba County California Policies & Procedures 80874 and dated July 15, 2020. Defendants shall provide at least 30-days' notice to Plaintiffs' counsel prior to implementing any changes to this protocol. If Plaintiffs object to the changes the parties shall meet and confer before the changes go into effect. | SC | SC | N/A |
| 4.B.6A.2 | Telepsych - Determining Appropriateness | Telepsychiatry can be used to provide psychiatry services unless it is determined, prior to or during a telepsychiatry visit, that telepsychiatry services are not appropriate for the incarcerated person. In determining whether telepsychiatry is appropriate, the following will be considered:<br>a)the incarcerated person's acuity and severity of mental illness, including whether the person's mental illness affects their ability to communicate effectively with the psychiatrist by video;<br>b)whether the incarcerated person has any disabilities that would make communicating with the psychiatrist by video difficult;<br>c)whether any language barriers would render communication with the psychiatrist by video ineffective;<br>d)whether the person has refused to be seen by the telepsychiatrist because the psychiatry services are not being provided in person;<br>e)and any other considerations relevant to whether telepsychiatry is appropriate for the incarcerated person.<br>f)If the Qualified Mental Health Professional determines that telepsychiatry services are not appropriate for the incarcerated person, the incarcerated person must be seen expeditiously by a psychiatrist in person. | SC | SC | SC |

| Section | Subject | SACD Text | 1st Rprt Compliance Rating | 2d Rprt Compliance Rating | 3d Rprt Compliance Rating |
|---------|---------|-----------|----------------------------|---------------------------|---------------------------|
| 4.B.6A.3 | Telepsych - Referral to Psych | If a tele psychiatrist determines during a telepsychiatry visit that telepsychiatry services are not appropriate for the incarcerated person:<br>a)the psychiatrist shall note that finding in the medical record.<br>b)and Defendants shall then ensure that the incarcerated person is seen expeditiously by a psychiatrist in person.<br>c)Reasonable efforts shall be made to ensure continuity of care so that incarcerated persons are seen by same psychiatrist throughout the duration of their incarceration. | SC | SC | SC |
| 4.B.6A.4 | Telepsych - Overview of Jail | Before a psychiatrist provides telepsychiatry services to incarcerated people in the Jail,<br>a)Defendants shall provide the tele psychiatrist with a briefing regarding the mental health and suicide prevention programs at the Jail,<br>b)the available options if a person experiences a mental health emergency or otherwise requires care at a level not capable of being provided at the Jail, and any other information necessary to treat people in the Jail.<br>c)The briefing shall also include an in-person or virtual tour of the Jail's safety and stepdown cells<br>d)and, once completed, the new building constructed with SB 863 funding. | SC | SC | SC |
| 4.B.7.1 | Sick Calls - Providing and Processing Slips | Daily sick call must be provided by an RN/PA/NP to all incarcerated persons requesting mental health attention. All incarcerated persons experiencing mental health issues must be permitted to fill out a sick call request form.<br>a)Sick call request forms shall be readily available to incarcerated persons,<br>b)and Correctional Officers shall promptly provide these forms to incarcerated persons upon request.<br>c)Sick calls slips that raise issues relating to mental health shall be triaged within twenty-four (24) hours.<br>d)If it is unclear from the language on a sick call slip whether or how quickly a person needs to be evaluated by a Qualified Mental Health Professional, the PA, NP, or RN shall meet with the person and attempt to clarify the person's request for care within twenty-four (24) hours of receipt. | SC | SC | PC |

| Section | Subject | SACD Text | 1st Rprt Compliance Rating | 2d Rprt Compliance Rating | 3d Rprt Compliance Rating |
|---|---|---|---|---|---|
| 4.B.7.2 | Sick Calls - MH Referrals | If while triaging a sick call slip or other request relating to mental health care the PA, NP, or RN determines that the incarcerated person should see a Qualified Mental Health Professional, or other mental health specialist, the PA, NP, or RN shall make an appropriate referral.<br>a)For emergent requests, a Qualified Mental Health Professional shall see the person immediately or Defendants shall transfer the person to an outside facility for immediate assessment.<br>b)For urgent request, a Qualified Mental Health Professional shall see the person within twenty-four (24) hours.<br>c)For routine requests, a Qualified Mental Health Professional shall see the person within seven (7) days.<br>d)Correctional Officers shall ensure that the incarcerated person is transported to the proper person or facility. | SC | SC | PC |
| 4.B.7.3 | Sick Calls - Med Referrals | If a healthcare professional or Qualified Mental Health Professional believes that tests, evaluation, or treatment by a mental health specialist are medically indicated, the healthcare professional or Qualified Mental Health Professional shall fill out a referral slip for the test, evaluation, or treatment. | SC | SC | SC |
| 4.B.7.4 | Sick Calls - Tracking Slips | Defendants shall develop and implement a process to track and assess the timeliness of providing sick call services for mental health-related requests.<br>Defendants shall review and assess that information on a quarterly basis, at a minimum.<br>Defendants shall produce documentation of these quarterly assessments of mental health sick call timeliness as part of the quarterly production of documents to Class Counsel and the appointed Monitor.<br>The mental health staff shall, on a monthly basis,<br>a)meet to discuss the provision of mental health care services in the Jail,<br>b)including addressing the timeliness of sick calls and prescription renewals,<br>c)identification of causes of systematic delays<br>d)or other impediments to providing timely access to mental health care, and develop protocols and practices to address such issues.<br>e)If the cause of any ongoing delays or issues that last for three (3) months or more is related to insufficient mental health staffing, the Jail shall take all reasonable steps to revise their mental health staffing plan and obtain funding to retain any additional positions deemed to be necessary. | PC | PC | PC |

| Section | Subject | SACD Text | 1st Rprt Compliance Rating | 2d Rprt Compliance Rating | 3d Rprt Compliance Rating |
|---|---|---|---|---|---|
| 4.B.8.1 | ER Care & Hospitalization - Access to Care | Emergency psychiatric care must be available twenty-four (24) hours per day, seven (7) days a week. In an emergency mental health situation, or at the request of health care personnel, an incarcerated person must be transported to the appropriate hospital for treatment and evaluation. Security requirements and concerns cannot unreasonably delay the incarcerated person's transportation. | SC | SC | SC |
| 4.B.8.2 | ER Care & Hospitalization - ER Psych Care | For individuals who are in acute psychiatric distress and in need of urgent inpatient psychiatric care that cannot be provided at the Jail, whether or not awaiting transfer to a state hospital pursuant to court order, the Jail shall comply with the following plan: 1. The incarcerated person will be taken to Rideout Hospital, where Sutter Yuba Behavioral Health (SYBH) has staff on site, or similar facility. 2. The purpose of taking the incarcerated person to Rideout or similar facility is to determine whether the incarcerated person requires care that cannot be provided at the Jail. (a) If a determination is made in writing that the person does not require psychiatric care that cannot be provided at the Jail, that person will be returned to the Jail with instructions for further evaluation and care, if any. (b) If a determination is made that the person does require psychiatric care that cannot be provided at the Jail, the expectation is that SYBH, or similar facility will care for that individual (either at Rideout or its psychiatric care facility) or locate bed space at another facility. 3. Jail staff shall, as needed, cooperate with Sutter-Yuba Behavioral Health to locate appropriate bed space at another facility. | SC | SC | SC |

| Section | Subject | SACD Text | 1st Rprt Compliance Rating | 2d Rprt Compliance Rating | 3d Rprt Compliance Rating |
|---|---|---|---|---|---|
| 4.B.8.3 | ER Care & Hospitalization - Continuity of Care During Transfers | The Jail shall not, for security reasons, unreasonably deny or delay in providing transportation for emergency psychiatric hospitalization which is medically indicated.<br><br>The Jail shall provide incarcerated persons with adequate care when they are awaiting transfer to and have returned from such facilities.<br>All incarcerated person returning from emergency psychiatric treatment at an outside facility will be (a) screened at intake for continuity of care (which will include, if necessary, consultation with a physician or psychiatrist for continuity of prescribed medications) and to ensure that the Jail has all relevant records, labs, and orders from the incarcerated person's treatment at an outside facility; (b) seen at the next sick call by a Qualified Mental Health Professional for incarcerated person returning from mental health treatment; and (c) seen at the next available sick call conducted by a psychiatrist. | SC | SC | SC |
| 4.B.9.1 | Recordkeeping - MH Records | Qualified Medical and Mental Health Professionals must maintain complete, current, and accurate records regarding an incarcerated person's mental health care treatment and prescription drug use.<br>a)An individual record (hereinafter referred to as the "Jail medical record") must be kept for each incarcerated person, b)and a copy of this record must be kept in a separate file in the Jail or in an electronic database.<br>c)These records must be standardized so as to facilitate communication among staff.<br>d)Provision in the records must be made to allow entry of the following information: history, complaints, treatment plan, and progress notes.<br>e)All entries must be dated and the time noted.<br>f)In addition, Qualified Medical and Mental Health Professionals must record the fact that a drug or other prescribed treatment was administered, at what time, in what dosage, and by whom on the form available for that purpose. | SC | SC | SC |
| 4.B.9.2 | Recordkeeping - Documenting MH Symptoms | All clinical contacts, diagnoses, and treatments by Qualified Medical and Mental Health Professionals must be entered in the Jail record.<br>a)All Qualified Medical and Mental Health Professionals shall be trained to recognize the common side effects associated with use of psychotropic medications.<br>b)If a nurse observes that an incarcerated person is experiencing any of these side effects, they will document their observations in the medical record and schedule the patient to see a medical provider at the next available sick call. | SC | SC | SC |

| Section | Subject | SACD Text | 1st Rprt Compliance Rating | 2d Rprt Compliance Rating | 3d Rprt Compliance Rating |
|---|---|---|---|---|---|
| 4.B.9.3 | Recordkeeping - Documenting MH Med Refusals | If a prescribed substance is refused or withheld for 3 consecutive day the prescribing medical provider shall be notified after three consecutive refusals. | SC | SC | PC |
| 4.B.9.4 | Recordkeeping - Documenting Med Reactions | Following the medication administrations, the nursing staff shall also notify the physician promptly of the following:<br>(a) Any adverse reaction or response by a patient to a medication; and/or<br>(b) Any error in the administration of a medication to a patient. | SC | SC | PC |
| 4.C | MH Training For Correctional Officers | Defendants shall ensure that all Correctional Officers receive annual training regarding the provisions of this SACD and the requirements of Title 15 related to mental health and suicide prevention. | SC | SC | SC |
| 4.D.1 | Suicide Prevention - QMHP Eval | Qualified Mental Health Professionals shall be available on-site seven (7) days per week and on-call as necessary to evaluate whether an incarcerated person's risk of suicide requires that he or she be sent out of the Jail for evaluation and treatment, up to and including psychiatric hospitalization where warranted, and shall issue all suicide precaution orders, including  placement in or removal from housing for incarcerated person at risk of suicide, and confidential follow-up assessments at clinically appropriate intervals. | SC | PC | SC |
| 4.D.2 | Suicide Prevention - Staff Training | Custody and health services staff shall be trained and alerted to the need and continuously monitor incarcerated person behavior for suicide potential during incarceration. | SC | PC | SC |
| 4.D.3 | Suicide Prevention - Communication Among Staff | Custody, mental health staff shall maintain open lines of communication to ensure that all parties are kept apprised of suicide potential; suicide precaution placement, retention, and release status; monitoring findings including general status reporting through time of event and end-of-shift reporting and on call contacts to ensure appropriate continuity of care and follow-up. | PC | PC | SC |

| Section | Subject | SACD Text | 1st Rprt Compliance Rating | 2d Rprt Compliance Rating | 3d Rprt Compliance Rating |
|---|---|---|---|---|---|
| 4.D.4 | Suicide Prevention - Training | All custody and health care staff shall receive suicide awareness, preventions, and emergency response training during new employee orientation, and at least annually. a)All such training shall be provided by or in collaboration with a Qualified Mental Health Professional, or other person qualified to provide training in an area of suicide risk, having expertise in correctional suicide prevention and the use of a suicide risk assessment form. b)Regularly scheduled training for all custody and health care staff shall include, at a minimum, identification and management of suicidal behavior in a jail setting including high-risk periods of incarceration, suicidal risk profiles, and recognition of verbal and behavioral cues that indicate potential suicide. The Jail shall undertake a mortality-morbidity review for every incarcerated person who dies from suicide while in custody of Defendants, regardless of whether the incarcerated person dies in the Jail or in a hospital or other facilities after being transferred from the Jail. | PC | PC | PC |
| 4.D.5 | Suicide Prevention - Mortality/Morbidity Review | The Jail shall undertake a mortality-morbidity review for every incarcerated person who dies from suicide while in custody of Defendants, regardless of whether the incarcerated person dies in the Jail or in a hospital or other facilities after being transferred from the Jail. | NC | NC | PC |
| 5.A.1 | Suicide Hazards - Experts | Defendants shall retained James Sida and Richard Bryce to conduct evaluations of suicide hazards at the jail. | SC | SC | NA |
| 5.A.2 | Suicide Hazards - Biannual Safety Reviews | For as long as this SACD is in effect, Defendants shall have a qualified consultant conduct a follow up safety assessment of the Jail every two (2) years, at a minimum. a)The first evaluation shall be completed by no later than May 31, 2024. The Monitor can conduct the follow-up safety assessment if qualified to do so. | SC | PC | NA |
| 5.A.3 | Suicide Hazards - Physical Plant Changes | If any of the changes to the physical plant at the Jail that Defendants made in response to the reports issued by Mr. Sida or Mr. Bryce is damaged, breaks, or otherwise becomes inoperable or ineffective, Defendants shall immediately replace or repair the element. | SC | PC | NA |
| 5.B.1 | Housing Mentally Ill People At Risk of Suicide - Classification | An incarcerated person's serious mental illness and suicide risk will be considered when deciding where to house the incarcerated person. Housing decisions for incarcerated persons with serious mental illness shall take into account that availability of sufficient structured and unstructured out-of-cell time and increased observation and supervision commensurate with the incarcerated person's risk of suicide, as well as the risk posed by suicide hazards in various parts of the Jail. | PC | PC | PC |

| Section | Subject | SACD Text | 1st Rprt Compliance Rating | 2d Rprt Compliance Rating | 3d Rprt Compliance Rating |
|---|---|---|---|---|---|
| 5.B.2 | Housing Mentally Ill People At Risk of Suicide - Suicide Watch Procedures | Defendants shall maintain suicide watch and suicide precaution procedures to ensure that incarcerated persons who pose a risk of suicide are not placed in punitive, unsanitary, and dangerous conditions. a)Where clinically warranted as decided by a medical or mental health care professional, an acutely suicidal incarcerated person shall be placed on suicide watch under constant observation until such time as a Qualified Mental Health Professional determines that the incarcerated person is no longer at risk of self-harm. b)Health and safety checks shall also be conducted every 15 minutes in locations where incarcerated persons are housed who pose a high suicide risk, c)and every 30 minutes in locations where incarcerated persons are housed who pose a moderate suicide risk. d)Whether a person poses a high, moderate, or low risk of suicide shall be determined by a Qualified Mental Health Professional. e)If it is determined a suicidal incarcerated person cannot be safely monitored and cared for within the Jail, the incarcerated person shall be transferred to the hospital for inpatient psychiatric care. f)All steps taken to expeditiously transfer such incarcerated persons shall be documented. | SC | PC | SC |
| 5.B.3 | Housing Mentally Ill People At Risk of Suicide - Seg Housing | Defendants shall limit the use of Segregated Housing, including Administrative Segregation and safety cells, for incarcerated persons with serious mental illness or who present a serious suicide risk, and shall have procedures to mitigate the impact of Segregated Housing on persons with mental illness. a)Custody staff shall conduct health and safety checks for incarcerated person who are at risk of suicide in a manner that allows staff to personally view the incarcerated person to assure his or her well-being and security. b)Health and safety checks shall require visual observation and, if necessary to determine the incarcerated person's well-being, verbal interaction with the incarcerated person. c)Custody staff shall conduct the checks at irregular and unpredictable intervals to minimize incarcerated persons' ability to plan around anticipated checks, and shall document their checks in a format that does not have pre-printed times. d)Video surveillance may not be used as an alternative to rounds by custody staff. e)Defendants shall keep complete, accurate, and contemporaneous logs of each health and safety check and develop measures to ensure review of such logs for compliance. | PC | PC | PC |

| Section | Subject | SACD Text | 1st Rprt Compliance Rating | 2d Rprt Compliance Rating | 3d Rprt Compliance Rating |
|---------|---------|-----------|----------------------------|---------------------------|---------------------------|
| 5.C.1 | Safety Cells - Policy | Defendant shall maintain a Safety Cell Policy. As set forth in that policy, an incarcerated person shall only be placed in a safety cell if the incarcerated person is identified as an imminent threat to himself/herself or others, and then only as a temporary measure until the incarcerated person is able to be transferred to different housing or, where clinically warranted, to a hospital or inpatient facility.<br>a)Custody staff must visually observe each incarcerated person who is placed in a<br>b)safety cell at least twice every thirty (30) minutes<br>c)The observations must be conducted at irregular and unpredictable intervals and must be documented. | SC | SC | SC |
| 5.C.2 | Safety Cells - Observation | Custody staff must visually observe each incarcerated person who is placed in a safety cell at least twice every thirty (30) minutes. The observations must be conducted at irregular and unpredictable intervals and must be documented. | SC | SC | SC |
| 5.C.3 | Safety Cells - Med Assessment | An incarcerated person must receive a medical assessment by a physician, PA, NP, or RN within one (1) hour (unless unsafe to do so under the circumstances of placement into a safety cell), to determine whether said placement is appropriate.<br>a)The physician, PA, NP, or RN must evaluate whether the incarcerated person can safely be housed in a less restrictive environment than a safety cell and/or requires transfer to an inpatient medical or mental health facility.<br>b)If the physician, PA, NP, or RN is unable to conduct a hands-on assessment of the incarcerated person, including a check of vital signs, within six (6) hours of placement in the safety cell, the incarcerated person shall immediately be transferred to a hospital. | PC | PC | PC |
| 5.C.4 | Safety Cells - Suicide Risk Assessment | If a Qualified Mental Health Professional is on site at the time an incarcerated person is placed in a safety cell, the Qualified Mental Health Professional shall conduct an evaluation of the person, including a suicide risk assessment, as soon as possible but no later than within four (4) hours of placement. | SC | SC | SC |
| 5.C.5 | Safety Cells - Med Staff Performing Suicide Risk Assessment | If a Qualified Mental Health Professional is unable to conduct an evaluation within four (4) hours of placement of a person in a safety cell—either because:<br>a)a Qualified Mental Health Professional is not on site during the four (4) hour period<br>b)or is on site but is unable to timely evaluate the person because he or she is addressing the urgent needs of other incarcerated people—then a Physician, PA, NP, or RN shall conduct a suicide risk assessment as soon as possible, but no later than within four (4) hours of safety cell placement.<br><br>Only Physicians, PAs, NPs, or RNs who have been trained regarding how to conduct a suicide risk assessment shall conduct such assessments. | SC | SC | SC |

| Section | Subject | SACD Text | 1st Rprt Compliance Rating | 2d Rprt Compliance Rating | 3d Rprt Compliance Rating |
|---------|---------|-----------|---------------------------|---------------------------|---------------------------|
| 5.C.6 | Safety Cells - Med Staff Confer with MH Staff | If a Physician, PA, NP, or RN conducts the suicide risk assessment, within two (2) hours after administering the suicide risk assessment, a)the staff member who conducted the suicide risk assessment must consult with a Qualified Mental Health Professional (either on-site or by phone) to determine an appropriate plan of treatment and the appropriate level, if any, of suicide precaution. b)In addition, if a Physician, PA, NP, or RN conducts the suicide risk assessment, then a Qualified Mental Health Professional must evaluate the person as soon as possible but no later than within two (2) hours of the start of the next shift of a Qualified Mental Health Professional. | PC | PC | SC |
| 5.C.7 | Safety Cells - Psych Sick Call | If the person is placed on suicide watch, safety cell protocol will be followed. If the suicide risk assessment established that the incarcerated person is at risk of suicide, the incarcerated person will, at a minimum, be placed on the next psychiatrist sick call. a)The Qualified Mental Health Professional who conducts the suicide risk assessment or with whom the Physician, PA, NP, or RN who conducted the suicide risk assessment consults, can, if necessary, consult with a psychiatrist at any time, refer the incarcerated person to be seen by a psychiatrist before the next psychiatrist sick call, or cause the incarcerated person to be transferred to a hospital for evaluation. | SC | PC | SC |
| 5.C.8 | Safety Cells - Housing | For incarcerated persons who are found to be at risk of suicide, the suicide risk assessment shall be used to determine the level of suicide precautions necessary in the immediate term (e.g., constant observation), and whether the incarcerated person needs to be transferred to an in-patient psychiatric facility or hospital in lieu of suicide watch/suicide precautions at the Jail. | SC | SC | SC |
| 5.C.9 | Safety Cells - Rounding | All incarcerated persons placed in safety cells shall be evaluated at least once every seven (7) hours by medical staff and at least once every thirteen (13) hours by a Qualified Mental Health Professional. | PC | PC | PC |
| 5.C.10 | Safety Cells - Consultation as to LRH | Defendants recognize that the goal is to have the incarcerated person remain in a safety cell for the shortest possible amount of time. Every thirteen (13) hours, custody, medical, and mental health care staff must review whether it is appropriate to retain an incarcerated person in a safety cell or whether the incarcerated person can be transferred to a less restrictive housing placement. | PC | SC | PC |

| Section | Subject | SACD Text | 1st Rprt Compliance Rating | 2d Rprt Compliance Rating | 3d Rprt Compliance Rating |
|---------|---------|-----------|---------------------------|---------------------------|---------------------------|
| 5.C.11 | Safety Cells - Xfer to LRH | An incarcerated person who has been placed in a safety cell for twenty-four (24) consecutive hours or for thirty-six (36) total hours in any one-hundred-and–twenty (120) hour period must either be a)transferred to a less restrictive setting or b)transferred to an inpatient mental health facility or to a hospital emergency room for assessment and care.<br><br>In addition, an incarcerated person may not be placed in a safety cell more than two times in any one-hundred-and-twenty (120) hour periods.<br><br>If Defendants seek to place an incarcerated person in a safety cell for a second time within any one-hundred-and-twenty (120) hour period, Jail medical or mental health staff shall consult with a psychiatrist regarding that placement.<br><br>An arriving incarcerated person that is unable to care for his/her personal needs despite being provided food, clothing, and shelter by the Jail, shall not be maintained in a safety cell and instead shall be immediately transferred to a hospital for treatment. | SC | SC | SC |
| 5.C.12 | Safety Cells - Release | A Qualified Mental Health Professional may authorize the release of an incarcerated person from a safety cell.<br><br>The order authorizing the release of an incarcerated person from a safety cell shall, if appropriate, include instructions regarding transitioning the incarcerated person from suicide precautions or suicide watch. | SC | SC | SC |
| 5.C.13 | Safety Cells - MH Follow-Up | An incarcerated person released from a safety cell or a step-down cell to housing will be seen at the first mental health sick call following their release and at least two (2) additional times within seven (7) days of their release. | PC | PC | PC |
| 5.C.14 | Safety Cells - Cleaning of Cells | Defendants shall ensure that a safety cell is clean before placing a person in it. a)Defendants shall also ensure than an occupied safety cell is cleaned at least twice per day at approximately 8:00 a.m. and 8:00 p.m., unless it is not possible to do so because of safety concerns. b)Defendants shall clean a safety cell once a person is removed from it. c)Defendants shall indicate on the safety cell log when an occupied safety cell is cleaned. | SC | SC | SC |

| Section | Subject | SACD Text | 1st Rprt Compliance Rating | 2d Rprt Compliance Rating | 3d Rprt Compliance Rating |
|---|---|---|---|---|---|
| 5.C.15 | Safety Cells - Shutters | Defendants shall not close the shutters to the windows on the safety cell doors. a)Defendants may, upon request of an incarcerated person in a safety cell or if circumstances otherwise warrant, cover up to half of the window on a safety cell door in order to protect the privacy of the incarcerated person in the safety cell or incarcerated persons in other parts of the booking area. b)If Defendants cover any part of a window on a safety cell door, c)Defendants shall document the reasons on the safety cell check sheet. Defendants shall never cover or obstruct the windows at the back of the safety cells. | SC | SC | SC |
| 5.C.16 | Safety Cells - Food | Incarcerated persons held in safety cells shall be offered food at least three times within a 24-hour period. Incarcerated persons held in safety cells shall be provided water with each meal and upon request. Defendants shall record on each incarcerated person's safety cell log each time the incarcerated person is provided with or declines an offer of food or water. | SC | SC | SC |
| 5.D.1 | Step-Down Cells - Purpose | Defendants shall maintain a "step-down" cell. The purpose of the step-down cell is to house incarcerated persons who, because of their risk of suicide, require increased monitoring and a suicide-safe environment, but do not require housing in a safety cell. For purposes of this SACD, the step-down cell is a less restrictive setting than a safety cell. The step-down cell shall be free of suicide hazards. Defendant shall, either by constructing a surface on which incarcerated persons can sleep or by providing an alternative sleeping surface, ensure that all incarcerated persons placed in the step-down cell have a sleeping surface off the ground. Staff shall ensure that the step-down cell is clean and sanitized. | SC | SC | SC |
| 5.D.2 | Step-Down Cells - Observation | Custody staff must visually observe each incarcerated persons who is placed in the step-down cell at least once every thirty (30) minutes. The observations must be conducted at irregular and unpredictable intervals and must be documented | SC | SC | SC |
| 5.D.3 | Step-Down Cells - Evaluation | If a person is placed directly into a step-down cell for mental health issues or suicidality, and is not first placed in a safety cell, then the requirements set forth in Section V.C regarding timelines for initial medical and mental health evaluations and a suicide risk assessment shall apply. | PC | SC | SC |
| 5.D.4 | Step-Down Cells - Rounding | All incarcerated persons placed in the step-down cell shall be evaluated at least once every seven (7) hours by medical staff and at least once every thirteen (13) hours by a Qualified Mental Health Professional. | PC | PC | PC |

| Section | Subject | SACD Text | 1st Rprt Compliance Rating | 2d Rprt Compliance Rating | 3d Rprt Compliance Rating |
|---|---|---|---|---|---|
| 5.D.5 | Step-Down Cells - Consultation as to LRH | Incarcerated persons may be housed in a step-down cell for more than twenty-five (25) consecutive hours so long as every twenty-five (25) hours a Qualified Mental Health Professional, after consulting with the psychiatrist, agrees to continued placement in the step-down cell. | SC | PC | PC |
| 5.D.6 | Step-Down Cells - Time Limits | If an incarcerated person has been housed for one-hundred-and-twenty (120) consecutive hours in a combination of safety cells and the step-down cell cannot be returned to a setting in the Jail that is less restrictive than the step-down cell, he or she shall be immediately transferred to an inpatient mental health facility or to a hospital emergency room for assessment and care. | SC | SC | SC |
| 5.D.7 | Step-Down Cells - Monitor's Review of Policy | The parties agree that as part of the first monitoring report prepared by the Monitor, the Monitor shall evaluate the policy set forth in the preceding paragraph. In advance of the evaluation, the parties shall meet with the Monitor to discuss the parameters of the evaluation. In the first monitoring report, the Monitor shall provide a recommendation regarding whether the policy should remain as is and, if not, what alternative policy or policies should be put in place. The parties shall then meet and confer regarding the recommendation. | NR | NR | NA |
| 6.1 | Due Process for Mentally Ill Persons - MH Eval for Rule Violations | If the Jail Supervisor believes that an incarcerated person's mental illness was a significant factor in causing a rule violation, the incarcerated person shall be referred for a mental health evaluation and possible treatment. Should the Jail Supervisor charge a person determined to have a mental illness which caused or contributed to the violation, the Jail Supervisor must consult with a Qualified Mental Health Professional prior to imposing any sanction in order to determine whether the proposed sanction is likely to exacerbate an incarcerated person's mental health symptoms and expose the incarcerated person to an increased risk of danger. If there is a danger that a proposed sanction will exacerbate an incarcerated person's mental illness or expose him to increased risk of danger, an alternate sanction shall be imposed, if at all, unless safety security reasons dictate otherwise. | SC | PC | PC |

| Section | Subject | SACD Text | 1st Rprt Compliance Rating | 2d Rprt Compliance Rating | 3d Rprt Compliance Rating |
|---|---|---|---|---|---|
| 6.2 | Due Process for Mentally Ill Persons - Consult with QMHP for Sanctions | Should the Jail Supervisor charge a person determined to have a mental illness which caused or contributed to the violation, the Jail Supervisor must consult with a Qualified Mental Health Professional prior to imposing any sanction in order to determine whether the proposed sanction is likely to exacerbate an incarcerated person's mental health symptoms and expose the incarcerated person to an increased risk of danger. If there is a danger that a proposed sanction will exacerbate an incarcerated person's mental illness or expose him to increased risk of danger, an alternate sanction shall be imposed, if at all, unless safety security reasons dictate otherwise. | SC | PC | PC |
| 7.1 | Ad Seg - Classification | Administrative Segregation is a housing classification decision. Every assignment of a person to Administrative Segregation shall be based on a written report providing an explanation of the facts and circumstances requiring the segregation. This report shall be written as soon as possible and in no case later than forty-eight (48) hours after the initiation of the assignment to Administrative Segregation. Said reports shall be retained. | SC | SC | SC |
| 7.2 | Ad Seg - Observation | Custody staff shall conduct appropriate health and welfare checks on all incarcerated people placed in Segregated Housing sufficient to ensure safety and security and minimize the risk of suicide. | SC | SC | SC |
| 7.3 | Ad Seg - Suicide Risk Eval | Incarcerated persons moved from the general population to Segregated Housing who either (a) have not yet received their 14-day Initial Health Assessment or (b) have received their 14-day Initial Health Assessment and are on the mental health case load will be screened for suicide risk by a Qualified Mental Health Professional as soon as possible but no later than forty-eight (48) hours after placement. | SC | PC | PC |
| 7.4 | Ad Seg - MH Rounds | A Qualified Mental Health Professional shall conduct rounds for those in Segregated Housing four (4) times per week. | SC | SC | PC |
| 7.5 | Ad Seg - SMI Housing | Defendants shall not house incarcerated persons with serious mental illness in Administrative Segregation (A-Pod, S-tank) or the medical cells unless those incarcerated persons demonstrate a current threat to Jail security, safety of incarcerated persons, or officer safety, as documented by custody staff, that prevents them from being safely housed in less restrictive locations. Incarcerated persons shall not be housed in Administrative Segregation solely because they have a mental illness. | SC | SC | PC |

| Section | Subject | SACD Text | 1st Rprt Compliance Rating | 2d Rprt Compliance Rating | 3d Rprt Compliance Rating |
|---------|---------|-----------|----------------------------|---------------------------|---------------------------|
| 7.A.1 | Out-Of-Cell & Rec Time in Seg Housing - Minimum Time | Defendants shall maximize out-of-cell time for incarcerated people in Segregated Housing. a)Defendants shall offer incarcerated persons in Segregated Housing the use of their respective day rooms or equivalent indoor recreation space continuously from 6 a.m. to 10 p.m. b)All incarcerated persons in Segregated Housing shall be offered, at a minimum, one (1) hour out-of-cell time in the day room or other indoor area per day. c)After each incarcerated person in a Segregated Housing unit has been offered one (1) hour out-of-cell time during a given day, the remaining hours of day room availability shall be offered to the incarcerated persons in the Segregated Housing unit in a manner such that the incarcerated persons are offered approximately equal additional out-of-cell time measured on a weekly basis. d)Defendants shall document the time that each incarcerated person in Segregated Housing spends out-of-cell. | SC | PC | SC |
| 7.A.2 | Out-Of-Cell & Rec Time in Seg Housing - Out-Of-Cell Time With Others | To the maximum extent possible, Defendants shall offer each incarcerated person in Segregated Housing the opportunity for out-of-cell time with as many other incarcerated persons as possible, so long as concerns over safety and security do not prevent the incarcerated person from being placed in the same space as other incarcerated persons. a)All incarcerated people in Segregated Housing shall be offered a minimum of at least fifteen (15) combined hours of indoor and outdoor out-of-cell time per week. b)In addition, the Jail shall undertake reasonable and good faith efforts to provide additional out of cell time. c)This may include, but is not limited to, additional day room use, additional use of the outdoor recreation yards, programing time, or mental health contacts. | SC | SC | SC |
| 7.A.3 | Out-Of-Cell & Rec Time in Seg Housing - Treatment | All incarcerated people in Segregated Housing shall be offered a minimum of at least fifteen (15) combined hours of indoor and outdoor out-of-cell time per week. a)In addition, the Jail shall undertake reasonable and good faith efforts to provide additional out of cell time. b)This may include, but is not limited to, additional day room use, additional use of the outdoor recreation yards, programing time, or mental health contacts. | SC | PC | SC |

| Section | Subject | SACD Text | 1st Rprt Compliance Rating | 2d Rprt Compliance Rating | 3d Rprt Compliance Rating |
|---|---|---|---|---|---|
| 7.A.4 | Out-Of-Cell & Rec Time in Seg Housing - Radios | Defendants shall continue to provide radios to incarcerated persons in Segregated Housing. a)Issuance of radios is deemed a deterrent to sensory deprivation experienced by some incarcerated persons in Segregated Housing. b)One radio shall be provided per Segregated Housing cell. The Jail will maintain a policy regarding use of the radios, which will include the right of custody staff to remove the radio from a cell and/or an incarcerated person for safety, security or disciplinary reasons. | SC | SC | SC |
| 7.A.5 | Out-Of-Cell & Rec Time in Seg Housing - Tablets | As of the date of the parties entered into this SACD, the Jail has made available a number of electronic tablets for use by incarcerated persons in Segregated Housing and other areas of the Jail. Defendants shall continue to permit incarcerated persons in Segregated Housing to use the tablets. | SC | SC | SC |
| 7.A.6 | Out-Of-Cell & Rec Time in Seg Housing - In-Cell Tablet Use | As of the date the parties entered into this SACD, persons in Segregated Housing have generally only been able to use the tablets when they are outside of their cells. Defendants shall make reasonable efforts to provide incarcerated persons in Segregated Housing with opportunities for in-cell access to the tablets, taking into account the number of available tablets and the number of incarcerated persons in Segregated Housing who are eligible for tablet use. | SC | SC | SC |
| 7.A.7 | Out-Of-Cell & Rec Time in Seg Housing - Number of Tablets Available | Defendants shall make reasonable efforts to provide incarcerated persons in Segregated Housing with opportunities for in-cell access to the tablets, taking into account the number of available tablets and the number of incarcerated persons in Segregated Housing who are eligible for tablet use. | SC | SC | SC |
| 7.A.8 | Out-Of-Cell & Rec Time in Seg Housing - Access to Tablets | Defendants may deny persons the right to use tablets for safety, security or disciplinary reasons. Defendants shall not be required to provide tablets to persons in Segregated Housing in accordance with the preceding two paragraphs if the cost of providing tablets unreasonably increases or the service of providing tablets becomes unavailable for all in the jail. | SC | SC | SC |
| 7.A.9 | Out-Of-Cell & Rec Time in Seg Housing - Rec Equipment | Incarcerated persons in Administrative Segregation shall have access to a)a telephone, b)a television, and c)a bicycle exercise machine. d)Board games, cards, and other recreation equipment shall be maintained and available to administratively segregated incarcerated persons upon request. | SC | SC | SC |

| Section | Subject | SACD Text | 1st Rprt Compliance Rating | 2d Rprt Compliance Rating | 3d Rprt Compliance Rating |
|---|---|---|---|---|---|
| 7.A.10 | Out-Of-Cell & Rec Time in Seg Housing - Length of Stay in Seg | Defendants shall strive to limit the placement of incarcerated persons in Segregated Housing for prolonged periods of time. a)An incarcerated person may request a review of classification or placement in Segregated Housing by completing an incarcerated person request slip. b)Classification shall also review the placement of incarcerated persons in Segregated Housing at least once a month, though more frequently if necessary for certain categories of incarcerated persons, such as individuals with serious mental illness. c)Classification shall also consult medical staff concerning each incarcerated person's progress toward the goal of placing the incarcerated person in general population. d)If other reasonable housing options exist that will provide for the safety of the incarcerated person, the incarcerated person should be moved out of segregation. In reviewing an alternative housing decision, the safety of the incarcerated person shall receive the utmost consideration. | PC | PC | PC |
| 7.A.11 | Out-Of-Cell & Rec Time in Seg Housing - New Jail Building | Defendants have broken ground on construction of a new building at the Jail using state funding pursuant to SB 863. Defendants agree that, once they have begun to plan for the manner in which the building will be used, Defendants will meet and confer with Plaintiffs regarding the mental health services to be offered in the building if the SACD is still in place. | SC | PC | SC |